883 A.2d 562

**Wayne SWORDS and Bernell Swords, Appellants**

v.

**HARLEYSVILLE INSURANCE COMPANIES, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 2, 2004.

Decided Sept. 29, 2005.

Christian Earl Eaby, Lancaster, for Swords et al, appellants.

Scott B. Cooper, Harrisburg, for PA Trial Lawyers Ass'n, appellant amicus curiae.

Robert E. Kelly, Jr., Harrisburg, for Harleysville Ins. Companies, appellee.

Suzanne T. Tighe, James C. Haggerty, Philadelphia, for PA Defense Institute.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

In this appeal, we are asked to determine whether the Motor Vehicle Financial Responsibility Law ("MVFRL" or the "Law"), 75 Pa.C.S. § 1701 *et seq.*, renders an owner of a registered but uninsured vehicle ineligible to recover first-

party benefits when such an owner is injured in an accident which does not involve the owner's uninsured vehicle. For the reasons that follow, we hold that, under these circumstances, the MVFRL bars the owner from recovering first-party benefits. We, therefore, affirm that portion of the Superior Court's order reversing the trial court's entry of partial summary judgment in favor of Appellants.

The undisputed facts and relevant procedural history underlying this appeal are as follows. Bernell Swords ("Father") was the owner of a 1997 Chevrolet S–10 pick-up truck. Father insured his truck through Appellee Pennland Insurance Company ("Pennland").[1] On September 14, 1999, Father gave permission to his son, Wayne Swords ("Son"), to use the truck. On that day, Son was involved in an automobile accident in New Holland, Pennsylvania while operating Father's truck. At the time of the accident, Son owned a vehicle which he registered with the Pennsylvania Department of Transportation but for which he never obtained any insurance coverage.

Following the accident, Son sought to recover first-party benefits[2] pursuant to Father's Pennland policy. Pennland denied Son payment of first-party benefits.

Father and Son (collectively "Appellants") then filed suit against Pennland in the Court of Common Pleas of Lancaster County. Appellants' complaint consisted of eight counts, which included a request for a declaratory judgment. Appellants specifically contended that as a result of the accident, Son incurred medical and other expenses that qualify as first-party benefits under the MVFRL. Appellants asserted that

1. In their complaint, the Swords named Harleysville Insurance Companies as the defendant. Pennland notes in its brief to this Court that at the time of Son's accident, Father was insured by Pennland, now Harleysville Pennland Insurance Company. According to Appellee, Pennland is one of a group of related insurers, and Harleysville Insurance Companies is not an insurer but merely a trade name. While Pennland has pointed out the correct identity of Father's insurer since the inception of this case, it does not and has not challenged Appellants' right to pursue this action based on this oversight.

2. The MVFRL defines first-party benefits as "[m]edical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa.C.S. § 1702.

Pennland was statutorily mandated to cover these expenses pursuant to various provisions of the MVFRL. Accordingly, Appellants sought to have the court declare that Pennland was required by the MVFRL to provide Son with first-party benefits.

Pennland filed an Answer and New Matter, arguing that Section 1714 of the MVFRL, 75 Pa.C.S. § 1714, requires the owner of a vehicle registered with the Pennsylvania Department of Transportation to insure the vehicle as a condition precedent to obtaining first-party benefits under the MVFRL. Because Son owned a registered but uninsured vehicle at the time of the accident, Pennland averred that it properly denied Son first-party benefits pursuant Section 1714.

After answering Pennland's New Matter, Appellants filed a Motion for Partial Summary Judgment on their declaratory judgment count.[3] They argued that Pennland's act of denying coverage to Son was contrary to settled law as announced in this Court's decision in *Henrich v. Harleysville Insurance Companies*, 533 Pa. 181, 620 A.2d 1122 (1993), and the Superior Court's decision in *Kafando v. State Farm Mutual Automobile Insurance Company*, 704 A.2d 675 (Pa.Super.Ct.1998). Appellants asserted that these decisions hold that the limit on first-party benefits contained in Section 1714 of the MVFRL does not apply to a driver who is not operating his or her uninsured vehicle at the time of the accident. Relying on this authority, the trial court granted Appellants' Motion for Partial Summary Judgment.

On appeal, a unanimous *en banc* Superior Court reversed and remanded. *Swords v. Harleysville Insurance Companies*, 831 A.2d 641 (Pa.Super.Ct.2003).[4] The court found that the

---

3. In addition to filing an Answer and New Matter, Pennland filed preliminary objections to several of the counts enumerated in Appellants' complaint. The parties, however, apparently agreed to postpone the resolution of Pennland's preliminary objections until after a decision was reached regarding Appellants' claim for declaratory relief.

4. Although the trial court's order did not dispose of all claims and all parties, it did affirmatively declare Son's right to recover first-party benefits from Pennland. Therefore, the order was a final, appealable order pursuant to Pa.R.A.P. 341(b)(2) and the Declaratory Judgment

language of Section 1714 unambiguously requires that *"in order to be eligible to receive first-party benefits[,] a person must have the required insurance on any and every vehicle currently registered in that person's name in Pennsylvania at the time of the accident in question."* *Id.* at 645 (emphasis in original). In reaching this conclusion, the Superior Court necessarily overruled its decision in *Kafando,* determining that the *Kafando* court misinterpreted our decision in *Henrich.* *Swords,* 831 A.2d at 643.

In order to appreciate fully the reasoning of the Superior Court on this point, a brief review of our decision in *Henrich* and the Superior Court's decision in *Kafando* is necessary. In *Henrich,* Elizabeth Henrich, a passenger in her friend's uninsured vehicle, was injured when the vehicle veered off of the road. 620 A.2d at 1123. At the time of the accident, Henrich owned a registered but uninsured vehicle. Henrich was considered a "covered person" under the terms of her father's automobile insurance policy and, therefore, sought to recover uninsured motorist coverage from her father's policy. Her father's insurer denied coverage, arguing that Section 1714 of the Law precludes owners of registered but uninsured vehicles from recovering any insurance benefits. *Id.* This Court ultimately allowed Henrich to recover uninsured motorist coverage and determined "that Section 1714 does not apply to Ms. Henrich because she was not operating *her own* uninsured motor vehicle at the time of the accident." *Id.* at 1124 (emphasis in original). Relying primarily on *Henrich,* in *Kafando,* the Superior Court held that Section 1714 did not bar Kafando, the owner of a registered but uninsured vehicle, from recovering first-party benefits because he was not injured in his uninsured vehicle, but rather, he was injured as a passenger in a properly registered and insured vehicle. *See Kafando, supra.*

Act, 42 Pa.C.S. § 7532. *See Nationwide Mutual Insurance Company v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000) (finding that an order that affirmatively or negatively declares the rights of the parties constitutes an immediately appealable order under Pa.R.A.P. 341(b)(2) and 42 Pa.C.S. § 7532, notwithstanding the fact that the order does not dispose of all claims and all parties).

In its opinion regarding the matter *sub judice,* the Superior Court focused on the fact that Son was seeking first-party benefits, not the uninsured motorist coverage that Elizabeth Henrich sought. Because a claim for uninsured and underinsured motorist coverage is based on various provisions of the MVFRL which are distinguishable from the first-party benefits that are statutorily unavailable to owners of registered but uninsured vehicles pursuant to Section 1714, the court stated that any discussion of first-party benefits in *Henrich* is *dictum* and that the *Kafando* court erred in relying on *Henrich* in reaching its conclusion that because Kafando was not injured in his uninsured vehicle, he was not precluded under Section 1714 from recovering first-party benefits. *Swords,* 831 A.2d at 643–46. Lastly, the Superior Court found support for its decision in Section 1713 of the MVFRL,[5] concluding that Section 1713 indicates that the Legislature intended first-party benefits to follow the person and not the vehicle. *Swords,* 831 A.2d at 646.

For these reasons, the Superior Court reversed the trial court order and remanded the matter to the trial court. Appellants then petitioned our Court for allowance of appeal, which we granted. *Swords v. Harleysville Insurance Companies,* 579 Pa. 694, 856 A.2d 835 (2004).

 The standards which govern summary judgment are well settled. When a party seeks summary judgment, a court

---

**5.** Section 1713 of the Law provides in pertinent part as follows:

(a) **General rule.**—Except as provided in section 1714 (relating to ineligible claimants), a person who suffers injury arising out of the maintenance or use of a motor vehicle shall recover first party benefits against applicable insurance coverage in the following order of priority:

(1) For a named insured, the policy on which he is the named insured.

(2) For an insured, the policy covering the insured.

(3) For the occupants of an insured motor vehicle, the policy on that motor vehicle.

(4) For a person who is not the occupant of a motor vehicle, the policy on any motor vehicle involved in the accident. For the purpose of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident unless it was parked so as to cause unreasonable risk of injury.

75 Pa.C.S. § 1713.

shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. *Fine v. Checcio,* 870 A.2d 850, 857 (Pa.2005). A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. *Id.* An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. *Id.* n. 3. Whether the MVFRL precludes owners of registered but uninsured vehicles from recovering first-party benefits is a question of law; accordingly, our standard of review is *de novo. See id.* Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. *Id.*

By way of background, the Pennsylvania No–Fault Motor Vehicle Insurance Act [6] ("No–Fault Act") was the predecessor to the MVFRL. In 1984, the Legislature repealed the No–Fault Act, replacing it with the MVFRL. "[T]he primary concerns in repealing the No–Fault Act were the spiraling costs of automobile insurance and the resultant increase in the number of uninsured motorists." *Id.* (citation omitted). In fact, this Court specifically has recognized that "the MVFRL reflects a heightened concern by the General Assembly toward the increasing consumer cost of automobile insurance attributable in part to motorists who ignore the legal requirement that they insure their vehicles." *Windrim v. Nationwide Insurance Company,* 537 Pa. 129, 641 A.2d 1154, 1157 (1994).

In order to address this heightened concern, the MVFRL "required (and requires) that a vehicle owner show financial responsibility at the time of registration in terms of an ability

6. Act of July 19, 1974, P.L. 489, No. 176, §§ 101–701 (codified at 40 P.S. §§ 1009.101–1009.701) (repealed).

(by way of insurance or otherwise) to respond to specified damages claims, [ ] and subjects owners to penalties for failing to maintain financial responsibility." *Lewis v. Erie Insurance Exchange,* 568 Pa. 105, 793 A.2d 143, 150 (2002) (citing 75 Pa.C.S. §§ 1714 and 1305(d)). Such penalties are reflected throughout the MVFRL and evidence the intent of the Legislature to forcefully deter people from failing to insure their vehicles. *See, e.g.,* 75 Pa.C.S. § 1786(d) ("The Department of Transportation shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege of the owner or registrant for a period of three months if the department determines that the owner or registrant has operated or permitted the operation of the vehicle without the required financial responsibility.")

Our task here is to interpret Section 1714 of the Law, a specific penalty provision of the MVFRL. In interpreting the MVFRL, as in all matters requiring statutory interpretation, we are guided by the provisions of the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.* Under the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

We, therefore, begin by examining the words employed by the Legislature in drafting Section 1714 of the MVFRL. Section 1714, entitled "Ineligible claimants," states, in relevant part, that "[a]n owner of a currently registered motor vehicle who does not have financial responsibility . . . cannot recover first party benefits." 75 Pa.C.S. § 1714. The Law defines "financial responsibility" as

[t]he ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 be-

cause of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident. The financial responsibility shall be in a form acceptable to the Department of Transportation.

75 Pa.C.S. § 1702. Thus, when the definition of "financial responsibility" is read into Section 1714, in order for a claimant to be ineligible to receive first-party benefits, he or she must be an owner of a currently registered motor vehicle who does not have the ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the appropriate amounts delineated by the Law. Moreover, an owner's financial responsibility must be in a form acceptable to the Department of Transportation.

■ Here, the parties do not dispute that Son owned a currently registered vehicle at the time of the accident. Appellants, however, argue that Son had financial responsibility at the time of the accident, as he was driving Father's properly insured vehicle when the accident occurred. Pennland posits that regardless of whether Son was operating an insured vehicle at the time of the accident, he himself did not have financial responsibility as defined in Section 1702 of the Law and, therefore, is precluded from recovering first-party benefits per Section 1714. We agree with Pennland.

■ There is no ambiguity in Section 1714 as it relates to eligibility for first-party benefits. We, therefore, hold that Section 1714 of the MVFRL clearly and unambiguously renders an owner of a currently registered motor vehicle ineligible to recover first-party benefits when the owner fails to meet the requirements of financial responsibility as detailed in the MVFRL. The General Assembly did not qualify this preclusion by limiting its reach to situations in which an owner of a registered but uninsured vehicle is in an accident involving his or her uninsured vehicle, and we are not at liberty to add such a qualification in the face of the clear and unambiguous words of Section 1714.

 Moreover, in the context of Section 1714, "who" most certainly refers to "an owner of a currently registered vehicle." Section 1714, thus, requires every owner of a currently registered vehicle to have his or her *own* financial responsibility in order to be eligible to receive first-party benefits. This conclusion is supported by Section 1782 of the Law. Section 1782, entitled "Manner of providing proof of financial responsibility," provides in pertinent part as follows:

> **(a) General rule.**—Proof of financial responsibility may be furnished by filing evidence satisfactory to the department that *all motor vehicles registered in a person's name* are covered by motor vehicle liability insurance or by a program of self-insurance as provided by section 1787 (relating to self-insurance) or other reliable financial arrangements, deposits, resources or commitments acceptable to the department.

75 Pa.C.S. § 1782 (emphasis added). Section 1782 makes clear that the Legislature intended to require an owner of a registered vehicle to insure his or her vehicle in a manner acceptable to the Department of Transportation in order to prove the owner's financial responsibility. Consequently, the MVFRL does not allow owners such as Son to rely on the financial responsibility of others to circumvent the preclusion set forth in Section 1714. As such, Appellants' argument that Son had financial responsibility because he was driving Father's insured vehicle fails.

In addition to this failed argument, Appellants insist that *Henrich* requires us to find that Son is not precluded from receiving first-party benefits under Section 1714 because he was not operating his uninsured vehicle at the time of the accident. On the other hand, Pennland agrees with the Superior Court's assessment of *Henrich*.

At first blush, our disposition of the issue *sub judice* seems to be in tension with *Henrich*, particularly the explicit holding therein. *See Henrich*, 620 A.2d at 1124 ("We hold that Section 1714 does not apply to Ms. Henrich because she was not operating *her own* uninsured motor vehicle at the time of the accident.") (emphasis in original). Such a conclusion, however,

is proved false upon a closer examination of the MVFRL. This exercise reveals that the result we reach here and the result reached in *Henrich* both comport with the MVFRL.

While the MVFRL mandates in Section 1714 that owners of registered but uninsured vehicles cannot recover first-party benefits, the Law does not preclude such owners from recovering damages for injuries sustained as a result of automobile accidents. Indeed, the Law deems owners of registered but uninsured vehicles to have chosen the limited tort alternative. 75 Pa.C.S. § 1705(a)(5). This deemed choice allows an owner of a registered but uninsured vehicle to be, at least, "eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law...." 75 Pa.C.S. § 1705(d). Accordingly, when an owner of a registered but uninsured vehicle is the innocent victim of an accident, he or she can sue in tort and, at the very least, recover damages for economic loss. Such a result is consistent with *Henrich*, which allowed Ms. Henrich to recover uninsured motorist coverage, which, together with underinsured coverage, merely "serves to promote the recovery of damages *for innocent victims of accidents* with uninsured or underinsured drivers." *Lewis*, 793 A.2d at 151 (emphasis added).

There can be no doubt that in passing the MVFRL, the Legislature sought to penalize owners of registered vehicles who do not maintain financial responsibility. As we stated in *Henrich*, however, we will not attribute "harsh motives to the legislature unless they were clearly spelled out." *Henrich*, 620 A.2d at 1124. In Section 1714 of the MVFRL, the Legislature could not have been any clearer insomuch as it intended to preclude owners of registered vehicles who do not have financial responsibility from being eligible to recover first-party benefits, regardless of what vehicle in which they are injured. Yet, nowhere in the Law did the Legislature expressly preclude owners of uninsured vehicles from being eligible to receive the benefits of unin-

sured and underinsured motorist coverage if such an owner qualifies to receive this coverage pursuant to another person's policy. Minus such an express preclusion, the result in *Henrich* is sound—the MVFRL does not preclude owners of registered but uninsured vehicles from recovering uninsured or underinsured coverage.

While we are convinced that the result reached in *Henrich* was correct, we nonetheless must temper *Henrich's* purported holding. Because the MVFRL does not expressly preclude owners of registered but uninsured vehicles from benefiting from uninsured and underinsured coverage, it was unnecessary and improper for *Henrich* to rest its otherwise sound decision on the premise that Section 1714 did not preclude Henrich from recovering uninsured motorist benefits because she was not driving her uninsured vehicle at the time of the accident. As such, while we continue to adhere to the result in *Henrich*, we are compelled to isolate the explicit holding of *Henrich* to the facts presented in that case. In any event, the result in *Henrich* does not afford Son shelter from Section 1714.[7]

Having rejected Appellants' arguments, we conclude that because Son was the owner of a registered vehicle at the time of his accident and because he failed to meet the requirements of financial responsibility as detailed in the MVFRL at the time of his accident, Section 1714 of the MVFRL renders Son ineligible to recover first-party benefits. Accordingly, we affirm that portion of the Superior Court's order reversing the trial court's entry of partial summary judgment in favor of

7. We note that Appellants suggest that not allowing Son and owners like him to recover first-party benefits is unduly harsh when such owners decide to leave their uninsured vehicles at home, choosing instead to drive properly insured vehicles. While the preclusion set forth in Section 1714 may be harsh, so long as legislation is constitutional, it is the prerogative of the Legislature to employ harsh consequences in order to accomplish the policy behind the legislation. "Such policy determinations ... are within the exclusive purview of the legislature, and it would be a gross violation of the separation of powers doctrine for us to intrude into that arena." *Glenn Johnston, Inc. v. Commonwealth of Pennsylvania, Department of Revenue*, 556 Pa. 22, 726 A.2d 384, 388 (1999) (citation omitted).

Appellants, and we vacate the Superior Court's order in all other respects.[8]

8. We also note that the Superior Court's order inadvertently directed the trial court to enter judgment in favor of Pennland and against Appellants. Such a directive was inappropriate. The only matter before the Superior Court was Appellants' Motion for Partial Summary Judgment. Whether Pennland was entitled to relief on its preliminary objections or any other of its filings was not at issue. Thus, the Superior Court merely should have reversed and remanded for further proceedings.