Patricia GINGERLOWSKI, as Parent and Natural Guardian of Felicia Phillips, a minor, and Felicia Phillips, on her own behalf, Petitioners

v.

COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT, Medical Care Availability and Reduction of Error Fund, (The MCARE Fund), Successor and Interest to the Medical Professional Liability Catastrophe Loss Fund, (CAT Fund), Defendant Raoufe Hanna, M.D., Respondents.

Commonwealth Court of Pennsylvania.

Heard Oct. 27, 2008.

Decided Nov. 19, 2008.

Publication Ordered Dec. 3, 2008.

Kelly J. Lenahan, Scranton, for petitioners.

Cindy E. Sheaffer, Harrisburg, for respondent, Insurance Department, (MCARE Fund).

OPINION BY Judge SIMPSON.

In this Court's original jurisdiction, Patricia Gingerlowski, as parent and natural guardian of Felicia Phillips (Patient), and Patient, on her own behalf, (collectively, Petitioners), filed a complaint for declaratory judgment against the Pennsylvania Insurance Department, Medical Care Availability and Reduction of Error Fund (MCARE Fund), as successor in interest to the Medical Professional Liability Catastrophe Loss Fund (CAT Fund), (collectively, the Fund) and Raoufe Hanna, M.D. (Provider). Petitioners seek a declaration that the Fund is required by Section 605 of the former Health Care Service Malprac-

tice Act (Malpractice Act),[1] to defend and indemnify Provider, a pediatrician in Petitioners' pending medical malpractice action against Provider in Lackawanna County Common Pleas Court (common pleas).

Presently before me is the Fund's motion for summary judgment. The Fund, citing the Malpractice Act, Fund regulations and case law, asserts it is entitled to summary judgment for two fundamental reasons. First, Provider failed to purchase a reporting endorsement, commonly known as "tail" coverage, or its substantial equivalent, following his cancellation of his primary professional liability "claims made"[2] policy in July 1989. Second, Provider did not participate in the Fund or pay a Fund surcharge since July 1989. Thus, the Fund asserts it is not obligated under Section 605 of the Malpractice Act to provide indemnification and defense for a claim reported after Provider's cancellation of his claims made primary coverage.

Also me is the Fund's alternative petition for leave to amend new matter in order to assert statute of limitations and laches defenses.

## I. Background

Petitioners' complaint alleges as follows. Provider, a pediatrician and general practitioner, practiced medicine in Pennsylvania from approximately 1976 to July 1989. During this time, he maintained his primary professional liability insurance with the Pennsylvania Medical Society Liability Insurance Company (Insurer). Provider's policy was a claims made policy, which provided for a reporting endorsement, commonly known as tail coverage. The reporting endorsement provided:

> In the event of termination of insurance either by non-renewal or cancellation of this policy, or termination of reporting period the insured shall have the right upon payment of an additional premium (to be computed with the companies [sic] rules, rates, rating plans and premiums applicable on the effective date of the endorsement), to have issued an endorsement providing and [sic] additional REPORTING PERIOD in which claims otherwise covered by this policy maybe reported. Such right here under must, however, must [sic] be exercised by the insured by purchase of extended reporting endorsement at any time within the sixty (60) day period [following] the effective date of cancellation o[r] non-renewal. The endorsement shall afford limits of liability for extended reporting period in the amounts of $200,000.00 for each claim and $600,000.00 annual aggregate.

Compl. at ¶ 25.

Also, while he practiced in Pennsylvania, Provider maintained excess professional liability coverage with the Fund. However, when Provider cancelled his claims made

---

1. Act of October 15, 1975, P.L. 390, *as amended, formerly* 40 P.S. § 1301.605. The Malpractice Act was repealed and replaced by the Medical Care Availability and Reduction of Error Act (MCARE Act), Act of March 20, 2002, P.L. 154, *as amended,* 40 P.S. §§ 1303.101–1303.910. However, the MCARE Act did not extinguish any of the liabilities of the CAT Fund, but rather transferred those liabilities to the MCARE Fund. *See* Section 712(b) of the MCARE Act, 40 P.S. § 1303.712(b); *Paternaster v. Lee,* 581 Pa. 28, 863 A.2d 487 (2004).

2. Section 103 of the Malpractice Act, *formerly* 40 P.S. § 1301.103, defined a "**Claims made**" policy as "a policy of professional liability insurance that would limit or restrict the liability of the insurer under the policy to only those claims made or reported during the currency of the policy period and *would exclude coverage for claims reported subsequent to the termination even when such claims resulted from occurrences during the currency of the policy period."* (Emphasis added.)

policy in July 1989, he did not purchase tail coverage for it, and he no longer participated in the Fund.

On December 20, 1986, Patient was born at Community Medical Center (CMC) in Scranton. While hospitalized at CMC, she came under Provider's care until December 22, 1986. Following her birth, Provider performed routine tests on Patient's hips. Thereafter, and subsequent to discharge, Provider performed a number of examinations of Patient, including an orthopedic evaluation of her hips. In January 1988, Patient's mother alerted Provider to Patient's limp.

In June 1989, Provider relocated from Pennsylvania to California and later to Arizona. In June 1990, Patient came under the care of a new pediatrician who diagnosed congenital hip dislocation, also known as developmental hip dysplasia. In October 1990, Patient underwent referral for orthopedic treatment, which confirmed the diagnosis of congenital hip dislocation. Thereafter, Patient underwent several surgeries and extended physical therapy. Patient still suffers from extended disability and profound scarring as a consequence of Provider's failure to diagnosis her congenital hip dislocation.

In April 1994, Petitioners initiated a medical malpractice claim against Provider by writ of summons. Six days later, Insurer advised Petitioners it would not provide coverage for Provider because he failed to purchase the reporting endorsement on termination of his Pennsylvania practice. In a 1996 deposition in the common pleas action, Provider testified Insurer never notified him of the tail coverage requirement. Provider stated he would have purchased a tail policy if he received such notice.

In July 1994, Petitioners notified the Fund of Patient's malpractice claim against Provider, thereby placing the Fund on notice the claim fell under Section 605 of the Malpractice Act. They allege, under the circumstances here, Section 605 required the Fund to provide Provider with both primary and excess coverage for Petitioners' claims. Petitioners further allege the statute of limitations applicable to Patient, a minor, is 20 years from her birth and that it did not expire until December 2006.[3]

In response, the Fund took the position it would neither defend nor indemnify or assume the liability of Provider for his medical negligence because he failed to purchase tail coverage.

In October 1994, Patient and her parents filed a malpractice complaint in common pleas against Provider and CMC. Provider failed to file an answer, enter an appearance, or answer a request for admissions. In February 1997, common pleas entered a default judgment against Provider.

In November 2006, Petitioners filed this declaratory judgment action against the Fund and Provider. Petitioners seek a declaration that the Fund is required to defend and indemnify Provider in the common pleas action and provide primary and excess coverage for their claims.

After its preliminary objections were overruled,[4] the Fund filed an answer and

---

**3.** Presumably, Petitioners are referring to Section 513(c) of the MCARE Act, which provides: "No cause of action asserting a medical professional liability claim may be commenced by or on behalf of a minor after seven years from the date of the alleged tort or breach of contract or after the minor obtains the age of 20 years, whichever is later." 40 P.S. § 1303.513.

**4.** The Fund alleged lack of subject matter jurisdiction and failure to exhaust administrative remedies. It asserted the Insurance Department has exclusive jurisdiction to review

new matter alleging Provider is not eligible for Section 605 coverage because he did not purchase the required tail coverage on the cancellation of his claims made policy in July 1989. Consequently, he did not have basic insurance coverage in place for Petitioners' claim. Also, Provider did not pay a Fund surcharge since 1989. Therefore, Provider could not participate in the Fund and was not eligible for Fund coverage for Petitioners' claim.

Following the close of pleadings, the parties proceeded with discovery. Pursuant to my order of March 20, 2008, the parties completed discovery in an expedited manner. Ultimately, Petitioners filed a request for admissions, interrogatories, and a request for production of documents. The Fund filed a timely response.

## II. The Fund's Motion for Summary Judgment

Following completion of discovery, the Fund filed a motion for summary judgment asserting there are no genuine issues of material fact and that the Malpractice Act, Fund regulations, and the Supreme Court's decisions in *Paternaster v. Lee,* 581 Pa. 28, 863 A.2d 487 (2004) and *Dellenbaugh v. Medical Professional Liability Catastrophe Loss Fund,* 562 Pa. 558, 756 A.2d 1172 (2000) mandate a decision in favor of the Fund.

More specifically, the Fund's legal argument is as follows. The Legislature, in enacting the Malpractice Act, created the Fund to provide statutory excess medical malpractice coverage where a health care provider's liability exceeded their basic insurance coverage. *Former* 40 P.S. § 1301.701(d). As an exception, Section 605 of the Malpractice Act allowed a primary Insurer to request the Fund to provide first dollar indemnity and cost of defense where: the claim arose more than four years after the tort or breach of contract; and the claim was filed within the applicable statute of limitations. *Former* 40 P.S. § 1301.605. However, a provider needed to maintain basic insurance coverage applicable to a claim in order for Fund coverage to apply to the claim. *Former* 40 P.S. § 1301.701; *Paternaster; Dellenbaugh.*

To maintain basic insurance coverage on cancellation of a claims made policy, Fund regulations required the purchase of tail coverage or its substantial equivalent. See 31 Pa.Code § 242.2;[5] 31 Pa.Code 242.7(a)(2);[6] 31 Pa.Code § 242.17(d)(2);[7] *Paternaster.*

the Fund's written determinations and thus Petitioners' challenge to a Section 605 coverage determination must first be brought before the Insurance Department. Citing *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Assocation,* 914 A.2d 477 (Pa.Cmwlth.2007) (Commonwealth Court, not the Insurance Department, has original jurisdiction over claims against the Fund), another judge of this Court overruled the Fund's preliminary objections.

5. 31 Pa.Code § 242.2 defines "basic insurance coverage" under the Malpractice Act as: "Insurance or self-insurance with limits of liability which comply with the occurrence-based requirements of the act in section 701 of the act (40 P.S. § 1301.701). *In the case of a claims made policy permitted under sections 103 and 807 of the act (40 P.S. §§ 1301.103 and 1301.807), the insurance requirements of the act require purchase of the reporting endorsement (that is, tail coverage) or prior acts coverage or its substantial equivalent by the health care provider, upon cancellation or termination of the claims made policy."* (Emphasis added.)

6. 31 Pa.Code § 242.7(a)(2) provides (with emphasis added):

*Cancellation* or nonrenewal of claims made coverage resulting from the request of the insured or the cancellation or nonrenewal by the insurer *without the purchase of the reporting endorsement, prior acts coverage or its substantial equivalent automatically releases the Fund from liability for*

Here, Provider failed to purchase tail coverage upon cancellation of his claims made policy in July 1989. Therefore, the Fund is not required to provide Section 605 coverage for Petitioners' claim against Provider. *Former* 40 P.S. § 1301.701; 31 Pa.Code § 242.2; 31 Pa.Code § 242.7(a)(2); 31 Pa.Code § 242.17(d)(2); *Paternaster.*

Also, the Fund asserts, Provider did not participate in the Fund or pay the required Fund surcharges since 1989. Thus, he is ineligible for Fund coverage for Petitioners' claim. *Former* 40 P.S. § 1301.701(d); 31 Pa.Code § 242.17(b); *Dellenbaugh.*

Petitioners, in their answer/cross motion for summary judgment, do not dispute that Provider did not obtain tail coverage. Instead, Petitioners contend both Insurer and the Fund failed to give Provider sufficient notice that he needed to purchase tail coverage. Petitioners cite Section 807 of the Malpractice Act, *formerly* 40 P.S. § 1301.807, which provided:

> The Insurance Commissioner shall not approve a policy written on a "claims made" basis by any insurer doing business in this Commonwealth unless such insurer shall *guarantee* to the commis-

sioner the continued availability of suitable liability protection for health care providers *subsequent* to the discontinuance of professional practice by the health care provider or the sooner termination of the insurance policy by the insurer or the health care provider for *so long as there is a reasonable probability of a claim for injury for which the health care provider may be held liable.*

Petitioners argue there is no information indicating Insurer guaranteed the availability of tail coverage to Provider subsequent to his cancellation of his policy. Petitioners further assert Insurer did not notify or advise Provider of the requirement that he needed to purchase tail coverage subsequent to the cancellation of his claims made policy. Petitioners cite Provider's October 1996 deposition. During the deposition, Provider could not remember Insurer offering him tail coverage or explaining to him that if he did not purchase it Fund coverage would not be available to him. *See* Petitioners' Answer to the Fund's Motion for Summ. J., Ex. A (Dr. Hanna's Dep., 10/22/96, at 17–19).

Petitioners further assert Insurer's notice to the Fund that Provider did not purchase tail coverage, allegedly copied to

---

*claims* for injuries or death from services which were rendered or which should have been rendered by the health care provider *which occur or which are reported to the basic coverage insurance Insurer after the effective date of cancellation* or nonrenewal.

7. 31 Pa.Code § 242.17 relevantly provides:

(b) A health care provider failing to pay the surcharge or emergency surcharge within the time limits prescribed will not be covered by the Fund in the event of loss. ❖ ❖ ❖

(d) The Fund will be relieved of its responsibility in the following case:

(1) The Fund will be relieved of its responsibility to a health care provider to defend and indemnify a claim reported to the Fund under section 605 of the act (40

P.S. § 1301.605) if, at the time of the occurrence, the health care provider fails to maintain basic coverage insurance in compliance with the act and this chapter.

(2) Notwithstanding paragraph (1), if at the time of the occurrence the health care provider is insured on a claims made basis and thereafter fails to purchase the reporting endorsement, prior acts coverage or its substantial equivalent upon cancellation or non-renewal of the claims made policy, and subsequently a claim is reported to the Fund under section 605 of the act (40 P.S. § 1301.605), the Fund will be relieved of its responsibility to the health care provider to defend and indemnify the claim under section 605 of the act. (Emphasis added.)

Provider, (*see* the Fund's Answer to Petitioners' Request for Admissions, Ex. 3) is in violation of Section 1002 of the Malpractice Act, *formerly* 40 P.S. § 1301.1002 (cancellation of insurance policy), which provides:

> Any termination of a professional liability policy by cancellation, except for suspension or revocation of the insured's license or approval by the Commonwealth to provide health care services or for reason of nonpayment of premium, is not effective against the insured covered thereby, unless notice of cancellation shall have been given within 60 days after the issuance of such contract of insurance against the insured covered thereunder and no cancellation shall take effect unless a written notice stating the reasons for cancellation and the date and time upon which termination becomes effective has been received by the commissioner at his office. Mailing of such notice to the commissioner at his principal office address shall constitute notice to the commissioner.

Petitioners assert there is no information indicating Insurer sent this notice to the Commissioner; and that Insurer sent the notice on November 10, 1989, more than 60 days after the effective date of cancellation.

Petitioners further assert the Fund's May 1990 warning letter to Provider, and its July 1990 letter to Provider disclaiming Fund coverage due to his failure to purchase tail coverage, were sent to Provider's Scranton, Pennsylvania address. At the time, Provider work/resided in California or Arizona. Petitioners maintain the State Board of Medicine sent his license renewal applications to California and Arizona. Petitioners therefore assert both Insurer and the Fund should have known Provider's then-current address.

Summarizing, Petitioners assert there is no evidence Provider actually *chose* not to purchase tail coverage. Rather, Provider did not have notice of his obligation to purchase tail coverage in order to protect his personal assets. Thus, Petitioners contend Insurer and the Fund did not comply with their obligations under the Malpractice Act.

Finally, Petitioners assert Patient is left without a remedy, which is contrary to the intent of the Malpractice Act.

The Fund replied to Petitioners' answer, asserting the majority of information in Petitioners' answer/cross-motion is entirely irrelevant to the central issue in the case: whether the Fund, an executive Commonwealth agency, is obligated to provide Section 605 coverage for Petitioners' claim where Provider did not purchase the required liability coverage.

The Fund also asserts the Malpractice Act does not require the Fund to give notice to providers of the statutory requirement to purchase tail coverage for a claims made policy or the consequences of failing to do so. *See Finkbiner v. Med. Prof'l Liability Catastrophe Loss Fund,* 119 Pa.Cmwlth. 243, 546 A.2d 1327 (1998) (Fund obligations are statutory, not contractual).

The Fund further asserts Provider, not the Fund, cancelled his insurance policy. The Fund also maintains the May 1990 warning letter and the July 1990 disclaimer letter were mailed in the regular course of Fund business and were not returned as undeliverable.

Additionally, in the event its motion for summary judgment is denied, the Fund seeks to amend its answer and new matter to assert statute of limitations and laches defenses. It claims the amendment will not prejudice Petitioners.

## II. Analysis

■ A court shall enter summary judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. *Swords v. Harleysville Ins. Cos.*, 584 Pa. 382, 883 A.2d 562 (2005). Summary judgment is warranted if the evidentiary record entitles the moving party to a judgment as a matter of law. *Id.* When considering a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.* Summary judgment may be granted only when the right to such a judgment is clear and free from doubt. *Id.*

Here, the Fund asserts it is entitled to judgment as a matter of law because Provider did not purchase tail coverage on his cancellation of his claims made policy in July 1989, and because he did not participate in the Fund and did not pay the required Fund surcharges since July 1989. In light of the Supreme Court's decisions in *Paternaster* and *Dellenbaugh*, I agree.

### A. Tail Coverage

■ A health care provider must purchase tail coverage or its substantial equivalent on the termination of a claims made policy or he will not be eligible for Fund indemnification and defense of claims arising after the termination of the claims made policy. 31 Pa.Code §§ 242.2, 242.7(a)(2) and 242.17(d)(2); *Paternaster*. Otherwise, a provider would be without basic coverage insurance in violation of Section 701 of the Malpractice Act, *formerly* 40 P.S. § 1301.701.

The situation in *Paternaster* is similar to the situation here in several respects. In *Paternaster*, the plaintiff filed a medical malpractice claim in common pleas court against a doctor after the doctor's primary claims made policy lapsed. The Fund refused to indemnify the doctor because his claims made policy lapsed, he did not purchase tail coverage, and the plaintiff's claim arose after the claims made policy lapsed.

Ultimately, the common pleas court in *Paternaster* transferred the case to this Court. Both parties filed motions for summary judgment. The Fund asserted, among other arguments, that it could not be liable because the doctor let his claims made policy lapse and that primary coverage was essential for Fund coverage to apply under the Malpractice Act. To the contrary, the plaintiff argued the Malpractice Act required the Fund to provide occurrence-type coverage because the doctor had a primary policy in place at the time of the alleged wrongful act even though the doctor no longer had primary coverage when the plaintiff filed the claim.

Citing the Fund regulations at issue here, this Court granted summary judgment for the Fund. On appeal, the Supreme Court affirmed, noting Fund regulations requiring a health care provider with claims made policy to maintain primary insurance after the claims made policy expired are reasonable and consistent with the Malpractice Act.

In light of *Paternaster*, I conclude Provider's failure to purchase tail coverage upon his cancellation of his claims made policy in July 1989 relieves the Fund of its obligation to defend and indemnify Provider for Petitioners' claim filed in 1994. 31 Pa.Code §§ 242.7(a)(2) and 242.17(d)(2).

Petitioners, however, attempt to distinguish *Paternaster* on the basis it did not address the issue of whether the tail coverage requirement applies to requests for Section 605 indemnification and defense

where there is no primary coverage. Petitioners maintain the plaintiff in *Paternaster* did not frame the issue in terms of primary coverage. *See* 581 Pa. at 39, 863 A.2d at 494 n. 8. Petitioners thus assert *Paternaster* merely states there will be no excess coverage where the provider failed to purchase tail coverage.

Petitioners' attempt to distinguish *Paternaster* on this basis fails. In *Paternaster*, as here, the plaintiff sought both primary and excess coverage under Section 605. In both cases, the provider failed to obtain tail coverage upon termination of his primary claims made policy. In both cases, the claim was reported after termination of the claims made policy.

Moreover, where a health care provider has no primary coverage with a private Insurer and no excess coverage with the Fund, it is inconceivable that a claimant is nevertheless entitled to recover from the Fund. *Paternaster; Dellenbaugh.*

Petitioners further argue the Fund is obligated to provide Section 605 coverage here regardless of Provider's failure to purchase tail coverage because neither Insurer nor the Fund gave Provider sufficient notice that he needed to purchase tail coverage upon cancellation of his claims made primary policy. In support of their position, Petitioners cite Sections 807 and 1002 of the Malpractice Act, *formerly* 40 P.S. §§ 1301.807 and 1301.1002.

Neither Section 807 nor Section 1002 supports Petitioners' position. First, Section 807 directs that the Insurance Commissioner shall not approve a claims made policy of any insurer unless the policy provides for suitable liability protection for health care providers following termination of the policy. In short, Section 807 requires an insurer to guarantee to a health care provider the continued availability of tail coverage after a claims made policy expires. *Paternaster.*

Here, Petitioners' complaint acknowledges the claims made policy issued to Provider by Insurer included an opportunity to purchase tail coverage. *See* Compl. at ¶ 25. Insurer's policy provided (with emphasis added):

> *In the event of termination of insurance either by non-renewal or cancellation of this policy,* or termination of reporting period *the insured shall have the right upon payment of an additional premium* (to be computed with the companies [sic] rules, rates, rating plans and premiums applicable on the effective date of the endorsement), *to have issued an endorsement providing and [sic] additional REPORTING PERIOD in which claims otherwise covered by this policy maybe reported.* Such right here under must, however, must [sic] be exercised by the insured by purchase of extended reporting endorsement at any time within the sixty (60) day period [following] the effective date of cancellation o[r] non-renewal.

*Id.* Therefore, as indicated by Petitioners' complaint, Insurer notified Provider of his right to purchase available tail coverage as required by Section 807 of the Malpractice Act.

Moreover, Fund regulations promulgated under the Malpractice Act *legally required* Provider to maintain tail coverage upon cancellation of his claims made policy. *Paternaster.* These regulations were upheld as valid. *Id.* Basic insurance coverage, including tail coverage for terminated claims made policies, is an essential for Fund coverage for claims reported after the claims made policy expires. *Id.* Therefore, it is irrelevant whether Provider understood he needed tail coverage to remain eligible for Fund coverage for claims reported after he cancelled his claims made

policy.[8]

Further, Section 1002 of the Malpractice Act is clearly inapplicable here. Section 1002's notice requirements address an insurer's cancellation or nonrenewal of a provider's professional liability policy. Here, Provider, not Insurer, cancelled Provider's primary coverage policy when he relocated out of state in 1989. Therefore, Section 1002 is inapplicable.

For these reasons, I reject Petitioners' argument that lack of sufficient notice of the tail coverage requirement discharged Provider's obligation to purchase tail coverage in order to be eligible for Section 605 coverage for Petitioners' claim. Provider's failure to purchase tail coverage upon his cancellation of his claims made policy in July 1989 relieves the Fund of its obligation to defend and indemnify Provider for Petitioners' claim filed in 1994. 31 Pa.Code §§ 242.7(a)(2); 242.17(d)(2); *Paternaster.*

### B. Fund Surcharge

In addition to not purchasing tail coverage, Provider did not pay a Fund surcharge since 1989. Here, Petitioners did not file their malpractice claim against Provider until 1994. "A health care provider failing to pay the surcharge or emergency surcharge within the time limits prescribed will not be covered by the Fund in the event of a loss." 31 Pa.Code § 242.17(b). In *Dellenbaugh,* the Supreme Court determined this Court erred in holding the Fund liable where the doctor did not pay the required surcharges. "To conclude that a provider can ignore the re-

quirements of the Malpractice Act, yet reap the benefits thereof, is untenable. Further, when an insured is not covered for a loss, it is inconceivable that the claimant is nevertheless entitled to be paid by the Insurer for that loss. The court below, by holding [the Fund] liable for such a loss, plainly erred." 562 Pa. at 563, 756 A.2d at 1175.

Because Provider, after he cancelled his claims made policy in 1989, did not purchase tail coverage, did not participate in the Fund and did not pay the required Fund surcharges at the time Petitioners' reported their claim in 1994, the Fund properly denied Provider Section 605 coverage. *Paternaster; Dellenbaugh.*

### C. Absence of Remedy

I also reject Petitioners' argument that the Fund's interpretation of the Malpractice Act in this case leaves Patient without a legal remedy, which is contrary to Act's intended purpose. Petitioners still have a direct right of recourse against Provider. *Dellenbaugh.*

Moreover, the Supreme Court in interpreting the purpose of the Act, as stated in Section 102, *formerly,* 40 P.S. § 1301.102, noted the primary purpose of the Act was to make professional liability insurance available at a reasonable cost. "It is inherently contrary to [this] purpose to require the [F]und to cover claims made against those who have not paid their surcharges to the [F]und, for by doing so, the [F]und would be required to increase surcharges assessed against compliant health

---

8. Nonetheless, I note that in May 1990 the Fund sent Provider a letter stating he needed to purchase tail coverage in order to continue to participate in the Fund and that his name would be certified to the State Board of Medicine for disciplinary action if he did not. *See* Fund's Response to Petitioners' Request for Admissions, Ex. 4. In July 1990, the Fund sent Provider a letter disclaiming coverage for the period of January 1, 1978 to July 28, 1989 because Provider failed to purchase tail coverage. *See id.,* Ex. 5. The Fund mailed these letters to Provider's Scranton office address; they were not returned as undeliverable.

care providers." 562 Pa. at 562, 756 A.2d at 1174.

## D. Conclusion

For the above reasons, I grant the Fund summary relief by way of a declaration of rights.[9] Because Provider failed to purchase the required tail coverage on cancellation of his claims made policy in July 1989, and no longer participated in the Fund or paid the required Fund surcharges after July 1989, the Fund is relieved of its obligation to provide Section 605 coverage to Provider for Petitioners' claim reported in 1994. *Paternaster; Dellenbaugh.*

## *ORDER*

AND NOW, this 19th day of November, 2008, for the reasons stated in the foregoing opinion, Respondent MCARE Fund's Motion for Summary Judgment is **GRANTED;** accordingly, it is **DECLARED** that Raoufe Hanna, M.D., is not eligible for coverage from the MCARE Fund. Further, Respondent MCARE Fund's Petition for Leave to Amend New Matter is **DISMISSED** as **MOOT.**

Petitioners' Cross Motion for Summary Judgment is **DENIED.**

9. Having determined the Fund is entitled to summary judgment as a matter of law, I dismiss the Fund's petition for leave to amend new matter as moot.