J-S33031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DANNY LEROY BUTLER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARCTIC GLACIER USA | : | No. 3262 EDA 2017 |

Appeal from the Order September 26, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  October term, 2016 No. 02881

BEFORE:   OTT, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JULY 19, 2018**

Appellant Danny Leroy Butler appeals from the order of the Court of Common Pleas of Philadelphia County granting summary judgment in favor of Appellee Arctic Glacier USA ("Arctic").  Butler claims the lower court erred in finding Butler's wrongful termination action was barred by the statute of limitations as Butler had not properly transferred his previously-dismissed case from federal court pursuant to 42 Pa.C.S.A. § 5103(b).  We affirm.

The factual background of this case was aptly summarized by the United States District Court for the Eastern District of Pennsylvania as follows:

> [Butler] was hired by [Arctic] in April 2007 as a Production Associate in [Arctic's] Twin Oaks Pennsylvania facility.  [Arctic] is a manufacturer and distributor of ice products, and [Butler's] job responsibilities included operating various ice production machinery, stacking bags of ice on pallets, and using a forklift to move pallets within the warehouse.  Since demand for ice is greater in the summer, most of the Production Associates at the Twin Oaks facility—including [Butler]—were seasonally laid off

_____
*   Former Justice specially assigned to the Superior Court.

each fall and re-applied for their positions each spring. Each spring from 2008 until 2013, [Butler] was re-hired following an interview with the manager of the Twin Oaks facility, John Stratman ("Stratman"). At the conclusion of the 2014 peak ice season, [Butler] continued working at the facility throughout the winter to complete various off-season maintenance projects, and he thus did not experience a seasonal layoff in 2013 and was not required to re-apply for his position in the spring of 2014. Throughout his tenure at the facility, Plaintiff was consistently given excellent performance reviews. …

In early July 2014, an individual identifying herself as the mother of [Butler's] child called [Butler's] workplace hotline to report "widespread" use and distribution of marijuana at the Twin Oaks facility, including the specific accusation that [Butler] was using and selling marijuana at work. Vice President of the Northeast Region Andrew Gravener ("Gravener") decided to personally investigate the Twin Oaks facility in light of the report.

To conduct the investigation, Gravener and Division Production Manager Bob Keen ("Keen") went to the Twin Oaks facility and joined Stratman for interviews with each Production Associate. Management employees were not investigated because, according to Gravener, there was no allegation that management was involved in the use or distribution of marijuana. During the meetings, the employees were asked about their knowledge of drug use at the facility, and at least three employees told Gravener during their interviews that [Butler] was selling marijuana during his shift. Each employee was also asked to take a drug test, but given the option to decline if they admitted to management that they could not pass a test that day. [Butler] and Stratman both claim that Gravener offered employees who admitted they would fail the test two weeks to "get clean" before they would be asked again to take the test. Gravener denies that he offered employees a "grace period" (and has accused Stratman of lying about this fact), and maintains instead that the employees were given the option of admitting drug use only to avoid the expense and embarrassment of an inevitable positive test result. All parties agree that Gravener did not specifically say that declining to take the test that day would result in termination.

In his meeting with management, [Butler] denied selling marijuana at work. He was then asked whether he could pass a drug test, to which he responded "No." After several more

questions regarding his knowledge of drug use at the facility, he was again asked if he could pass a urine test, and he again indicated that he could not. [Butler] testified that he was never asked to take a drug test, and thus also never refused a drug test. At the end of the meeting, [Butler] was told to leave the facility and that management would be in touch about "what it was going to do."

A few days after the interviews, Keen informed Stratman that all of the employees who admitted that they could not pass a drug test would be fired, along with two employees who failed the test. Stratman believes that this was a change from the original plan to give a two-week grace period, but Gravener, who made the final decision to terminate the employees, testified that he had always planned to terminate any employees who admitted they could not pass the test. In any case, Stratman informed [Butler] that he was fired. [Butler] contends that Stratman told him that he was welcome to re-apply in 2015. Stratman does not recall if he said this.

In addition to [Butler], all of the other Production Associates who either admitted they could not pass a drug test or tested positive for drugs were fired as a result of the investigation. Five of them (four African-American and one Caucasian) had admitted they could not pass a drug test. The other two (one Hispanic and one African-American) tested positive for THC. None of the terminated employees were replaced during the 2014 season; shifts were consolidated and the remaining employees worked overtime to account for the reduced labor force. …

In April 2015, [Butler] applied to return to his seasonal Production Associate position. He also applied for a driver position, even though he did not have a Commercial Driver's License ("CDL"), which is a requirement for the driver position. Stratman asked Keen if [Butler] could be re-hired, and Keen replied that it was "not a good idea." In the course of the conversation, Keen and Stratman discussed the admission of drug use the prior year and the fact that [Butler] has been the employee originally accused of selling marijuana at the facility. Following this discussion, Plaintiff was not re-hired.

***Butler Arctic Glacier USA***, 213 F.Supp.3d 711, 713-715 (E.D. Pa. 2016)

(citations, headings, and footnotes omitted).

On June 1, 2016, Butler filed an action against Arctic in federal district court, asserting that Arctic's decision to fire Butler was a result of unlawful discrimination due to Butler's race and age in violation of federal and Pennsylvania law. In addition, Butler raised state law claims of invasion of privacy and wrongful termination. Specifically, Butler's wrongful termination claim at this point was based on his assertion that he was "unlawfully discharged when he refused to take a drug test." *See* Arctic's Motion for Summary Judgment, Exhibit F (Butler's First Amended Federal Court Complaint, at 7).

As the litigation progressed, the federal district court dismissed Butler's invasion of privacy claim and Butler abandoned his age discrimination claim; as a result, only the race discrimination and wrongful termination claim remained unresolved. On September 28, 2016, the federal district court granted summary judgment in favor of Arctic on the race discrimination claim and declined to exercise supplemental jurisdiction over the wrongful termination claim, which it dismissed without prejudice.

On October 20, 2016, in an attempt to transfer the case from federal to state court, Butler submitted a packet of documents to the Court of Common Pleas of Philadelphia County, which included the federal district court's order and memorandum opinion and a certified copy of the federal court's docket summary.

On March 7, 2017, Butler filed a new complaint against Arctic in the Court of Common Pleas of Philadelphia County, alleging grounds of unlawful

termination. Specifically, Butler claimed that he was illegally fired after Gravener "compelled him to answer questions about his medical history" and improperly induced him to admit that he would be unable to pass a drug test by promising him a "grace period" to get clean. State Court Complaint, 3/7/17, at 3.

On April 6, 2017, Arctic filed an Answer with New Matter in which Arctic claimed, *inter alia*, that Butler's claims were barred by the application of the statute of limitations. On April 26, Butler replied to the new matter with general denials.

On August 7, 2017, Arctic filed a Motion for Summary Judgment, reiterating its statute of limitations claim and claiming Butler had not properly transferred its action from federal court pursuant to 42 Pa.C.S.A. § 5103(b) as Butler had changed the operative facts of his wrongful termination claim. On September 8, 2017, Butler filed a response to Arctic's Motion for Summary Judgment. On September 25, 2017, with leave of court, Arctic filed a reply brief, arguing that Butler further had not complied with the specific procedural requirements set forth in Section 5103 to transfer the action from federal to state court. On September 26, 2017, Butler filed a motion to strike the reply brief, arguing that Arctic should not have been allowed to file a reply brief.

On September 26, 2017, the trial court filed an order granting Arctic's Motion for Summary Judgment, finding that Butler had failed to comply with the technical requirements of Section 5103 and had not preserved the filing date of his previously-filed case in federal court; thus, Butler's action was

time-barred by the statute of limitations in Pennsylvania. Butler filed a timely notice of appeal and complied with the lower court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

In reviewing the trial court's decision to grant summary judgment, we are guided by the following standards:

> When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion …
>
> ***Swords v. Harleysville Ins. Companies****,* 584 Pa. 382, 883 A.2d 562, 566–67 (2005) (citations omitted). To the extent this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. ***Truax v. Roulhac***, 126 A.3d 991, 996 (Pa. Super. 2015).

***Woodhouse Hunting Club, Inc. v. Hoyt***, 183 A.3d 453, 457 (Pa.Super. 2018).

Butler does not dispute that by the time he filed his state court action, the applicable two-year statute of limitations for a wrongful termination action had already expired. However, Butler argues that the trial court abused its discretion in finding that his attempt to transfer the case from federal court in

- 6 -

in accordance with 42 Pa.C.S.A. § 5103(b) did not successfully toll the statute of limitations in this case.

Under Section 5103, an action filed in Pennsylvania will be considered filed as of the date of a previously-initiated federal action if the litigant complies with the following requirements:

(a) General rule. If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth. A matter which is within the exclusive jurisdiction of a court or magisterial district judge of this Commonwealth but which is commenced in any other tribunal of this Commonwealth shall be transferred by the other tribunal to the proper court or magisterial district of this Commonwealth where it shall be treated as if originally filed in the transferee court or magisterial district of this Commonwealth on the date when first filed in the other tribunal.

(b) Federal cases.—

(1) Subsection (a) shall also apply to any matter transferred or remanded by any United States court for a district embracing any part of this Commonwealth. In order to preserve a claim under Chapter 55 (relating to limitation of time), a litigant who timely commences an action or proceeding in any United States court for a district embracing any part of this Commonwealth is not required to commence a protective action in a court or before a magisterial district judge of this Commonwealth. *Where a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district*

> ***of this Commonwealth by complying with the transfer
> provisions set forth in paragraph (2).***
>
> (2)  Except as otherwise prescribed by general rules, or by order
> of the United States court, ***such transfer may be effected
> by filing a certified transcript of the final judgment of
> the United States court and the related pleadings in a
> court or magisterial district of this Commonwealth***.
> The pleadings shall have the same effect as under the
> practice in the United States Court, but the transferee court
> or magisterial district judge may require that they be
> amended to conform to the practice in this Commonwealth.
> Section 5535(a)(2)(i) (relating to termination of prior
> matter) shall not be applicable to a matter transferred under
> this subsection.

42 Pa.C.S.A. § 5103 (emphasis added).

Butler admits that he did not fully comply with the requirements of Section 5103, but argues for the first time on appeal that Arctic waived the right to object to his noncompliance by failing to raise a preliminary objection; Butler now claims Arctic improperly waited to raise this claim as an affirmative defense under new matter in its answer. Butler also argues for the first time on appeal that Arctic failed to specifically object to his failure to submit certified pleadings until it submitted its reply brief to Butler's response to the motion for summary judgment.

We agree with the trial court's conclusion that Butler waived these claims by not raising them in the lower court. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Further, our rules of civil procedure provide that an affirmative defense that a claim is barred by the statute of limitations is required to be set forth in a responsive pleading entitled "New Matter." Pa.R.C.P. 1030(a)

- 8 -

("all affirmative defenses including ... statute of limitations... shall be pleaded in a responsive pleading under the heading "New Matter"). Thus, the trial court did not err in addressing Arctic's claim that Butler failed to toll the statute of limitations by not transferring his action from federal to state court.

Moreover, we cannot agree with Butler's suggestion that the trial court erred in dismissing his action as he was in "substantial compliance" with the mandate of Rule 5103 to transfer his action to state court. Butler's Brief, at 14. This Court has clarified that

> in order to protect the timeliness of an action under 42 Pa.C.S.A. § 5103, a litigant, upon having his case dismissed in federal court, must promptly file a certified transcript of the final judgment of the federal court and, at the same time, a certified transcript of the pleadings from the federal action. The litigant shall not file new pleadings in state court.

*Falcone, Inc. v. Ins. Co. of State of Pa.*, 907 A.2d 631, 637 (Pa.Super. 2006) (citing *Williams v. F.L. Smithe Mach. Co.*, 577 A.2d 907, 910 (Pa.Super. 1990)). This Court further noted that "the key to protection in this case is conformity with the statutory requirements, which are not onerous in light of the protection the statute affords." *Falcone*, 907 A.2d at 640.

In this case, Butler attempted to transfer his case from federal to state court by filing uncertified copies of the federal docket sheets and the opinion and order dismissing his federal action in the Court of Common Pleas; Butler concedes that he did not submit certified copies of the federal complaint or any of the other pleadings as documentation of the transfer. As a result, the lower court properly found Butler's noncompliance with the procedural

requirements of Rule 5103 prevented him from tolling the statute of limitations in his attempt to transfer the previously-dismissed federal action to state court.

Furthermore, even assuming *arguendo* that Butler had complied with the procedure outlined in Section 5103 to properly transfer the federal case to state court, the trial court also noted that Butler violated Section 5103 by making a material change in his case theory. We observe that in his federal complaint, Butler's wrongful termination was based on his assertion that he was "unlawfully discharged when he refused to take a drug test." ***See*** Arctic's Motion for Summary Judgment, Exhibit F (Butler's First Amended Federal Court Complaint, at 7). However, Butler filed a different complaint in the Court of Common Pleas, asserting that his wrongful termination claim was based on his assertion that Arctic's management "compelled him to answer questions about his medical history" and improperly induced him to admit that he would be unable to pass a drug test by promising him a "grace period" to get clean. State Court Complaint, 3/7/17, at 3.

We reiterate that a litigant attempting to transfer a case pursuant to Section 5103 "shall not file new pleadings in state court." ***Falcone***, 907 A.2d at 637. As Butler changed the factual basis of his wrongful discharge claim, he attempted to file a new cause of action which does not relate back to the filing of his federal court complaint. Thus, we conclude that the trial court did not err in determining that Butler did not comply with Section 5103 and that

the filing date for the federal litigation could not be used to compute whether Butler satisfied the applicable statute of limitations in the Commonwealth.

For the foregoing reasons, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/18