## Goodman *versus* Sanger.

1. Presumptions of a grant or an abandonment of title may arise from lapse of time and non-claim, but these should not be submitted to the jury if repelled by evidence.

2. The land in controversy was sold for taxes in 1816 by the treasurer and bought by and conveyed to the commissioners of Northumberland county ; the title being absolute in the county, nothing but redemption by their permission could adeem the title of the county.

3. Presumption of redemption by lapse of time and non-claim may be repelled by facts.

June 14th 1877.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Columbia county :* Of May Term 1877, No. 87.

Ejectment by John H. Goodman against John Sanger, for a tract of land situate in Conyngham township in Columbia county, containing 400 acres.  A warrant was issued January 10th 1794 to Johnston Besely for 400 acres in Northumberland county ; a survey was made for this tract on the Catawissa creek, in that county, and on October 16th of that year, a patent for the same was granted to Robert Morris.  By virtue of an Act of Assembly the county of Columbia was, in September 1813, erected out of Northumberland county, and this land in controversy has since then been situate in Columbia county.

By the act creating this last-named county, it was enacted that " all taxes or arrears of taxes laid or which have become due within the said county of Columbia before the passing of this act * * * shall be collected and recovered as if this act had not been passed."  The land in controversy was assessed in Northumberland county with taxes from 1796 to 1813, both inclusive.  The county taxes for the years from 1806 to 1813 inclusive and the road taxes for the years from 1805 to 1810 inclusive were not paid, and in 1816 the land was sold by the treasurer of Northumberland county, who, July 18th 1816, executed a deed for it to the commissioners of this county.  This was after the erection of the county of Columbia.  This land was subsequently assessed with taxes in Columbia county and sold by the treasurer of this county on June 11th 1838.  It was redeemed by the commissioners of Northumberland county by the payment of the taxes, &c.  The receipt for this payment was attached by a wafer to the deed that they had received from the treasurer of Northumberland county.  Without exercising any other acts of ownership, the commissioners, in 1874, advertised and sold it to the plaintiff below for $10,000.  His deed is dated July 1st 1874.  Defendant below was the tenant of D. B. Fisher, Asa Packer, E. P. Wilber and Gideon Bast, who claimed under the warrant to Johnston Besely and the patent to Robert Morris.  No person was in possession until December 1871, when Fisher and his co-tenants commenced the erection of a house. They paid no taxes previous to June 10th 1868.

The court below, Elwell, P. J., charged that there was no evidence that the taxes in Northumberland county were paid ; that the sale by the treasurer of that county to the commissioners was valid, and affirmed the following point :—

" That if the jury believe from the evidence, that the taxes were paid to the commissioners of Northumberland county *after* the sale of 1816, such payment would be a redemption from the sale, and in that case the plaintiff cannot recover."

[Goodman v. Sanger.]

And said: "If from the evidence the jury are satisfied that these taxes were paid *after* the sale, such payment would divest the title of Northumberland county acquired by the sale of 1816, whether a deed was endorsed upon the back of the treasurer's deed to the commissioners of Northumberland county or not."

The court further charged :—

" I decline to charge that there is any *legal* presumption raised by the facts in the cause, that this land was redeemed from the sale of 1816. But the undisputed facts that the commissioners of Northumberland county did no act of claim from the time of sale in 1816 to the sale made by them to the plaintiff in 1874 (except the redemption in 1840 from the sale of 1838), while the owners of the original title did the acts enumerated before on their part, together with all the evidence in the cause, may be taken into consideration by the jury, and if, from the evidence, they think the facts warrant them in so doing, they may presume, in favor of the purchasers of the original title, that the taxes were paid and the land redeemed. If, taking a natural and rational view of the whole subject, including the conduct of the parties, the payment of taxes, and every other circumstance, although there is no direct proof by witnesses, nor by papers executed, yet if the jury are satisfied, if their minds are convinced that the taxes were paid in redemption, they are at liberty so to find."

Verdict for defendant and judgment, and plaintiff below took this writ of error.

*Joshua W. Comly, J. G. Freeze, A. J. Dietrick* and *John W. Maynard*, for plaintiff in error.—There was error in the permission to read a certain entry in sale book of treasurer of Columbia county, because entirely irrelevant, and the mortgage of John Nicholson *et al.* to the United States Bank in May 1797 was irrelevant, as it was not important whether the bank was noted as the owner or not. The payment of taxes after the expiration of five years from the day of the sale was not a redemption from the sale. Under the Act of 1815 redemption of lands by the treasurer differs from those sold to the commissioners. In the first a legal tender of taxes, costs and percentage destroys the treasurer's deed. In the latter, where the land is redeemed, the commissioners must make a deed. Mere payment of taxes will not operate as a redemption from sale.

The title being in the commissioners, it could only be divested by deed: Hoffman v. Bell, 11 P. F. Smith 444. The then commissioners had the deed from the treasurer to their predecessors in office; there was no deed of redemption endorsed upon it; there was no entry of any redemption by any person on the minute books or other books in the office; there was nothing in the treasurer's books to show that the taxes or redemption money were ever paid to

[Goodman *v.* Sanger.]

him; in short, neither the commissioners, who sold in 1874, nor the purchaser, who then bought and paid his money, had any notice that any redemption money had been paid. If it is said that the defendant was in possession before the sale of 1874, and that should have put the plaintiff on inquiry, we admit this so far as inquiry could have procured any information.

A title to land, though unseated, cannot be lost by non-payment of taxes except by a treasurer's sale under the Act of 1815: Hockenbury *v.* Snyder, 2 W. & S. 240; Kelsey *v.* Murray, 9 Watts 111; Sailor *v.* Hertzogg, 10 Barr 316; Hoffman *v.* Bell, *supra;* Naglee *v.* Albright, 4 Whart. 300; Sorber *v.* Willing, 10 Watts 142; Devor *v.* McClintock, 9 W. & S. 80; Woodburn *v.* Farmers' and Mechanics' Bank, 5 Id. 450.

*George F. Baer, S. P. Wolverton* and *C. R. Buckalew,* for defendant in error.—Presumptions arising from lapse of time and non-claim should be submitted to the jury as a foundation of title by conveyances lost or destroyed: Carter *v.* Tinicum Fishing Co., 27 P. F. Smith 315; Kingston *v.* Lesley, 10 S. & R. 383; Foulk *v.* Brown, 2 Watts 214; Woodburn *v.* Farmers' and Mechanics' Bank, *supra;* Hastings *v.* Wagner, 7 W. & S. 218; Jackson *v.* Hudson, 3 Johns. 375; Orr *v.* Cunningham, 4 W. & S. 294.

Presumption of conveyance arises from lapse of time: Fox *v.* Thompson, 7 Casey 172; Galloway *v.* Ogle, 2 Binn. 468; Warner *v.* Henby, 12 Wright 187; Strimpfler *v.* Roberts, 6 Harris 283; McBarron *v.* Gilbert, 6 Wright 280; Robinson *v.* Williams, 6 Watts 281; Brown *v.* Day, 28 P. F. Smith 140.

The owner of the legal or equitable title may redeem: Dubois *v.* Hepburn, 10 Peters 23. The act allows redemption within five years: Steiner *v.* Coxe, 4 Barr 26; Coxe *v.* Walcott, 3 Casey 158; Diamond Coal Co. *v.* Fisher, 7 Harris 267; City of Philadelphia *v.* Miller, 13 Wright 440; Jenks *v.* Wright, 11 P. F. Smith 413.

Chief Justice AGNEW delivered the opinion of the court, October 1st 1877.

In this case only one question may be considered, that is, whether there was sufficient evidence of a redemption of the land by the heirs of Philip Meyer, or by the Bank of the United States, from the tax sale in 1816 to the commissioners of Northumberland county. That a presumption of a grant or an abandonment of title may arise from lapse of time and non-claim, when these point to the fact as a probable thing, is not disputable. The cases cited by the defendant in error prove this. Many precedents will be found collected and commented upon in Carter *v.* Tinicum Fishing Co., 27 P. F. Smith 315–16, and Brown *v.* Day, 28 Id. 139–40. But time and non-claim, to become the foundation of such a presumption, must accord with the other facts in evidence, reasonably

[Goodman *v.* Sanger.]

leading to this presumption. The presumption is not of law, but a natural inference to be drawn by a jury, of which there must be sufficient evidence, and ought not be submitted to them if really repelled by the other evidence. This is precisely the point before us. Do the facts in evidence accord with the presumption of a redemption to be drawn from the lapse of time and the alleged non-claim of the commissioners of Northumberland county?

To clear the case of a confusion of ideas between abandonment of title and redemption from sale, and from the effect of a payment of subsequent taxes, some things must be first noticed. And first it must be remembered that after the lapse of five years from the tax sale, the title of the county became absolute, and nothing but a redemption by the permission of the commissioners could adeem the title of the county; and it must be remembered that the tract remained in a wild and unseated state until the year 1871 or perhaps 1872. The legal or presumptive possession was, therefore, in the county in the meantime. It is next to be noticed that if a redemption existed, it is obvious it must have been made before the year 1840, that is, in the interval between the years 1816 and 1840, when the commissioners of Northumberland redeemed the land from the sale in Columbia county made in 1838. After 1840 a permissive redemption only could be made, and it is not pretended there is any evidence to justify this presumption. The utmost effect of the subsequent facts would be to help to sustain a redemption prior to 1840.

The next fact to be remarked is that there is no record or documentary evidence of a redemption of right or by permission, while under the sixth section of the Act 13th March 1815, the evidence ought to appear both in the treasurer's and the commissioner's office. The letters Pd. B. opposite to the entry of the county tax of fifty-two cents in the year 1805 clearly is no evidence of redemption. And first the entry is confined to the county tax of that year, and is not carried forward to the taxes following either by words or signs. Next the county tax, fifty-two cents, of 1805 was not included in the taxes set forth in the deed. These make $4.19, just the sum of all the other taxes down to 1813, including the road tax of 1805. The road taxes in all were $1.88, from which, deducting the fifty-two cents, $1.38 are left, the precise sum mentioned in the deed; showing that the clerk or scrivener inadvertently deducted the fifty-two cents from the wrong sum. It is evident that these fifty-two cents were paid before sale, and were not included. This accords with another pertinent fact. The Bank of the United States held a mortgage from John Nicholson, the owner of the land, dated in March 1797, and paid the back taxes of nine years, viz., $5.33, which sum precedes the entry of fifty-two cents, and was marked in the same way, Pd. B., so that the entry Pd. B. opposite the fifty-two, in 1805, was without doubt paid by the bank, and probably at the same time, the

[Goodman *v.* Sanger.]

road taxes of 1805 not being then returned, as was common. This is strengthened by still another fact. The mortgaged land was sold out by the state in the year 1807 upon her lien against John Nicholson, so that he had after that date no title to answer the mortgage to the bank. There is no reason, therefore, to suppose that the bank in 1816, or any time afterward, would redeem lands to which John Nicholson had no title to serve his mortgage. The court below held, and very properly, that there was no evidence to be submitted of payment of the taxes before the sale, and it is just as clear that there was none afterwards. As to the bank, we have seen it had nothing to redeem. · How then does the case stand as to Philip Meyer, the purchaser of the state of Nicholson's title in 1807? The law gave purchasers of Nicholson lands a long credit upon securing the payment by bond. Meyer gave his bond for the purchase-money, but died before it fell due and before the tax sale in June 1816, for on the 2d of January 1816 Valentine Brobst (the surety probably) paid the money into the state treasury for the *estate* of Philip Meyer. It is evident, therefore, that unless the heirs of Philip Meyer were old enough to know the state of the land in July 1816, when the treasurer made his deed to the county commissioners of Northumberland, it is not probable they redeemed. The facts, however, repel any presumption of a redemption by them. Their deed was not obtained from the Commonwealth until the year 1836, and it was not until the year 1859 they began to sell the lands purchased by their father, this tract being but one of a number included in the purchase, and bought at thirteen and a half cents an acre. Strength is added to these by another fact. On the trial of this cause in 1876, Franklin P. Meyer, one of the heirs, as he is shown to be in the deeds, was called to prove who were the heirs of Philip Meyer. If he were the oldest child he would have been eighty-one years old to have been in his majority in 1816. Besides the land had passed into the county of Columbia three years before, to wit, in 1813, rendering it still more improbable that the young heirs of Philip Meyer knew of a tax sale in Northumberland county in the year 1816. The power to make the sale had been reserved in the Act of 1813. In summing up these facts we can find nothing whatever to render a redemption probable; but rather the reverse and the negative is strengthened by these further facts. The commissioners of Northumberland, besides having no personal interest to quicken their diligence, were constantly changing; and like other officers of the county, being chosen from the body of the people, were not likely to have much knowledge of past county affairs. Before the end of the five years allowed for redemption it is probable no member of the board knew of the title of the county, while the land being in Columbia county was no longer on the tax books of Northumberland, to remind the commissioners from year to year of the claim of the county. Nor was there

[Goodman *v.* Sanger.]

anything in the condition of the land itself to remind them, it being tenantless and unseated until 1871 or 1872. When all these facts are summed up there appears to be no room for a presumption that would attribute the lapse of time and inattention of the commissioners of Northumberland county to a redemption. On the contrary, they repel such a presumption, and tend to lead to the belief that this lapse of time and inattention were owing to a want of knowledge and to neglect, until discovery of the deed or some other circumstance called the fact to mind when the redemption of 1840 took place. It is a strong fact against redemption that the deed poll, which the sixth section of the Act of 1815 requires to be surrendered, remained in possession; and this fact is further strengthened by the redemption by Northumberland county in 1840.

If then no redemption took place before 1840, nothing has occurred since, sufficient to prove abandonment of title by Northumberland county or the acquisition of a new title by the former owners. There was no actual possession of the land and nothing therefore upon which the Statute of Limitations could take effect. The title of the county then being absolute, there was nothing inchoate or imperfect, which might be suffered to lapse from laches or inattention. In the case of an absolute title and its constructive possession, as a legal incident of unseated land, the non-payment of taxes by the owner creates no abandonment or forfeiture of title. Nothing less than a sale of the land for the unpaid taxes will extinguish his title. Nor will payment of taxes by another give him title without a possession to give effect to the statute, or other facts to create an estoppel. Non-payment of taxes by the owner and payment of them by an intruder in possession, may be evidence of an admitted ouster to the extent of the boundaries of the tract and thus to extend the *pedis possessio* to the woodland; but payment of taxes alone will not confer title where none exists. These principles are fully sustained by numerous cases, a few of which are referred to: Naglee *v.* Albright, 4 Whart. 300; Sorber *v.* Willing, 10 Watts 141; Sailor *v.* Hertzogg, 10 Barr 316; Mayor of Philadelphia *v.* Riddle, 1 Casey 263; Kelsey *v.* Murray, 9 Watts 111. The facts of Kelsey *v.* Murray are not reported, but it is obvious from the opinion the land was in the possession of tenants, and therefore it is no exception to the rule.

Judgment reversed and a *venire facias de novo* awarded.