J-A26044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WOODHOUSE HUNTING CLUB, INC., A PENNSYLVANIA NON-PROFIT CORPORATION, PLAINTIFF | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| WILLIAM HOYT, MARK HOYT, EDWARD HOYT, THEODORE R. HOYT, AND GEORGE S. HOYT, T/D/B/A THE FIRM OF HOYT BROTHERS AND THEIR UNKNOWN HEIRS, SUCCESSORS, AND ASSIGNS, DEFENDANTS | |
| HOYT ROYALTY, LLC, TRUSTEES OF THE MARGARET E. HAIGHT TRUST; KAROL TAMOWSKI; THOMAS PEDDER BISPHAN; SYDNEY WYNNE WOODWARD; GERTRUDE WEBER; JOHN WEDEL; MATT WEDEL; JAY WEDEL; CAROLINE HOKE WEBER; HELEN HOYT WEBER; VIRGINIA FOOTE HAGGERTY; NATHAN CLARK SWEET; JOHN WEBER SWEET; AND ALL OTHER UNKNOWN HEIRS, SUCCESSORS AND ASSIGNS OF WILLIAM HOYT, MARK HOYT, EDWARD C. HOYT, THEODORE R. HOYT, AND GEORGE S. HOYT, INDIVIDUALLY, JOINTLY, AND/OR TRADING AS HOYT BROTHERS, COUNTERCLAIM PLAINTIFFS | No. 327 MDA 2017 |
| v. | |
| WOODHOUSE HUNTING CLUB A/K/A WOODHOUSE HUNTING CLUB, INC. AND CAMP WOODHOUSE HUNTING CLUB; SWN PRODUCTION COMPANY, LLC; AND CABOT OIL & GAS CORPORATION, F/K/A | |

J-A26044-17

|  |  |
|---|---|
| CABOT OIL & GAS CORPORATION OF DELAWARE AND CABOT OIL & GAS CORPORATION OF WEST VIRGINIA, AND WOODHOUSE HOLDING COMPANY, COUNTERCLAIM DEFENDANTS<br><br>APPEAL OF: HOYT ROYALTY, LLC | |

Appeal from the Order Entered February 7, 2017
In the Court of Common Pleas of Tioga County
Civil Division at No(s): 0302-CV-2008

BEFORE:  BOWES, J., OLSON, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                **FILED FEBRUARY 02, 2018**

Appellant, Hoyt Royalty, LLC, appeals from the trial court's order of February 1, 2017, granting summary judgment in favor of Appellee, Woodhouse Hunting Club ("Woodhouse").  After careful review, we affirm.

We adopt the following statement of facts from three trial court opinions issued in this matter, which are in turn supported by the record.  ***See*** Trial Court Opinion (TCO), 1/8/14, at 7-19; TCO, 2/7/17, at 1-5; TCO, 6/12/17, at 1-2.  This is an action to quiet title, involving the subsurface oil and gas rights to a tract of land consisting of nine hundred thirty-seven acres located in Morris Township, Tioga County, Pennsylvania, for which Warrant No. 1179 was issued in April 1792 ("the Property").

In 1891, William Hoyt, Mark Hoyt, Edward C. Hoyt, Theodore R. Hoyt, and George S. Hoyt ("the Hoyts") acquired title to the Property.  In 1893, the Hoyts conveyed the Property to Union Tanning Company.  The deed reserved ownership of the gas, oil, and mineral rights, and created a subsurface estate

- 2 -

in favor of the Hoyts, their heirs, and assigns. The Hoyts did not notify the Tioga County commissioner of the severance or their ownership in the subsurface estate.

Between 1893 and 1902, the Property was assessed as unseated land.[1] On August 30, 1902, the Property was sold at tax sale due to the nonpayment of taxes on both the surface and subsurface estates. The sale was recorded in the Treasurer's Sale Book of Unseated Lands by the Treasurer of Tioga County to Morris Manufacturing Company. On November 17, 1902, after the tax sale but prior to the recording of the tax sale deed, Union Tanning Company executed a second deed to the surface rights of the Property in favor of Morris Manufacturing Company,[2] and purportedly reserved mineral and oil rights in favor of the Hoyts and their heirs and assigns. The tax sale deed was not recorded until January 1903.

_____

[1] In short, "seated land" is land that has been 1) developed with residential structures, 2) had personal property upon it that could be levied upon for taxes, and 3) was producing regular profit through cultivation, lumbering, or mining; "unseated land" is "wild" and underdeveloped," or any other land that does not fit the definition of "seated" land. **See Herder Spring Hunting Club v. Keller**, 143 A.3d 358, 363-64, 380 n.2 (Pa. 2016). Taxes are imposed on the land itself, in the name of the person to whom the original warrant was issued. **Id.** at 364.

[2] Although Morris Manufacturing Company was listed in the tax records as being the owner of the Property between 1901 and 1902, the deed itself was not executed until 1902, and not recorded until 1903.

In 1932, the Property was again sold at tax sale. C.C. Slaght Lumber Company ("C.C. Slaght"), the record owner at the time, was allowed to redeem the Property in 1935, despite the expiration of the two-year redemption period. In May 1952, Woodhouse received title from C.C. Slaght. In 1953, Morris Township separately identified a mineral estate associated with Warrant 1179. In 1967, the Property was again sold at tax sale, but the rights eventually reverted to Woodhouse. Following several assignments through which Woodhouse reserved the subsurface rights, Woodhouse is the current record owner of the Property.[3]

In 2011, Woodhouse commenced an action to quiet title against Appellant, Hoyt Royalty, a Colorado-based LLC formed to acquire, own, possess and manage all rights, title, and interests in the subsurface mineral rights originally owned by the Hoyt brothers. Appellant claimed to possess an 83.9% interest in the subsurface rights to the Property. Litigation commenced, and Appellant joined additional defendants and filed a counterclaim.

In June 2013, Appellant filed a motion for summary judgment against Woodhouse, arguing that the 1893 deed to Union Tanning Company severed the natural gas, oil, and mineral rights from the 629.178-acre parcel of disputed land. In response, Woodhouse argued that the tax sale of 1902

---

[3] The trial court has meticulously and thoroughly documented the various sales, assignments, and locations the deeds are recorded, as well as the language of the deeds, dating back to 1792. We will not reproduce it in its entirety here.

extinguished the chain of title upon which Appellant relied, essentially effectuating a "title wash." In its response, Woodhouse proceeded solely on the "title wash" theory and abandoned several other claims to quiet title raised in the Complaint. The trial court granted the motion with respect to the claims abandoned by Woodhouse, but denied the remaining issues raised by Appellant.

In November 2014, Woodhouse filed a motion for summary judgment, and Appellant filed a countermotion. All parties agreed to stay the action pending the Pennsylvania Supreme Court's decision in ***Herder Spring Hunting Club v. Keller***, 143 A.3d 358 (Pa. 2016), which implicated similar concerns. Following the ***Herder Spring*** decision, the parties filed supplemental briefs, and the court issued its decision. The trial court quieted title in favor of Woodhouse as to the entire Property and enjoined Appellant and its successors from asserting a contrary record title.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued a responsive opinion.

On appeal, Appellant raises the following issues for our review:

1. Whether summarily quieting title for those whose title to the oil and gas rests solely from earlier tax sales, rather than Appellant and its related parties, whose title flows directly from a duly recorded 1893 deed severance, is erroneous when, as the party with the burden of proof, the tax title claimants did not proffer the delivered treasurer's deeds or other admissible evidence sufficient under the Statute of Frauds and prior case law to prove a legally superior title?

- 5 -

2. Whether the trial court erred in ruling the 1932 unseated land tax sale divested Appellant's 1893 recorded subsurface title when the summary judgment record contained undisputed evidence that a duly documented redemption occurred, rendering the sale a nullity?

3. Whether the trial court erred in ruling the 1902 and 1932 unseated land tax sales divested Appellant's 1893 recorded subsurface title when a strict construction of the tax statutes reveals the term "lands" means only the surface estate and when the summary judgment record reveals Morris Township identified no severed subsurface estate until 1953, thereby confirming only the severed surface estate was assessed and intended to be sold at the 1902 and 1932 tax sales or, alternatively, creating a genuine material, factual issue precluding summary judgment?

4. Whether summarily quieting title for those whose title to the oil and gas rests solely from earlier tax sales, rather than Appellant and its related party, whose title flows from a duly recorded 1893 deed severance, is erroneous when the summary judgment record includes: (a) disputed evidence of "potential infirmities" and "other sale related defects" concerning the 1902 and 1932 tax sales, (b) a duly recorded admissible 1902 deed within the tax claimant's chain of title which, being executed and recorded after the 1902 tax sale, does not mention it or any purportedly delivered treasurer's deed but instead expressly acknowledges the recorded 1893 deed severance, and (c) an inadmissible 1909 deed which does not involve the property?

5. Whether Pennsylvania's unseated land tax [statutes] under which the 1902 and 1932 tax sales were made and quiet title has been summarily entered violate federal and state due process as applied to Appellant and its related parties, as the known owners of recorded, nonproducing oil, gas, and other subsurface interests, who received no personal notice of such sales, including the 1902 tax sale which took place on a Saturday, August 30, 1902, in contravention of the statutes' requirement that all sales occur on the second Monday in June?

6. Whether the trial court erred in ruling Appellant is time-barred from defending its record title to the oil, gas, and other subsurface interests in a quiet title action the tax title claimants did not

commence until 2008 based on 1902 and 1932 tax sales for which no treasurer's deeds exists?

Appellant's Brief at 5-7 (suggested answers omitted).

An action to quiet title is designed to resolve a dispute over the title to real estate of which the plaintiff is in possession. *See Moore v. Duran*, 687 A.2d 822, 827 (Pa. Super. 1996). The plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title. *See Herder Spring*, 143 A.3d at 372. With regard to motions for summary judgment,

> the standards which govern summary judgment are well settled. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion . . . .

*Swords v. Harleysville Ins. Companies*, 883 A.2d 562, 566–67 (Pa. 2005) (citations omitted). To the extent this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. *Truax v. Roulhac*, 126 A.3d 991, 996 (Pa. Super. 2015).

As noted above, recently, the Pennsylvania Supreme Court decided *Herder Spring*, and as this decision disposes of Appellant's issues, we will

discuss the Court's holdings briefly. **_Herder Spring_** involved unseated land sold at tax sale where the assessment did not specify whether it involved surface or subsurface rights. **_Herder Spring_**, 143 A.3d at 360. The Court held unequivocally that where neither the owner nor the purchaser reported the transfer of the subsurface rights, the county would assess and tax the warrant in its entirety. **_Id._** At a tax sale, the entirety of the property is conveyed, despite prior severance, if both estates have not been paid. **_Id._** at 360-365. "Courts interpreting Pennsylvania law have a long history of accepting the concept of a tax sale reuniting severed estates of unseated property and perfecting previously defective titles." **_Id._** at 368.

Where the owner did not challenge the assessment and the tax sale within the initial two-year redemption period, a challenge to the propriety of the tax sale _may not be heard,_ and if the land is not redeemed within that period, then both surface and subsurface rights are extinguished. **_Id._** at 374-75 (citing Act of 1815, § 4, as set forth at 72 P.S. § 6091). The Court held that there was no estoppel by deed where the language of the deed stated it was subject to "all exceptions and reservations as are contained within the chain of title," and where title was extinguished by a prior tax sale. **_Herder Spring_**, 143 A.3d at 378. Finally, the Court held that notice by publication for tax sales of unseated lands was "reasonable given the difficulties of ascertaining ownership information relating to unseated owners," the protection afforded by the two-year redemption period, and that such notice

did not deprive a property owner of due process. *Id.* With those principals in mind, we now turn to Appellants' issues on appeal.

First, Appellant claims that the trial court erred in quieting title in favor of Woodhouse, because the Woodhouse parties did not meet their burden of proving a superior tax title to the Property's subsurface rights. *See* Appellant's Brief at 32. Appellant argues that because no delivered or recorded copies of the treasurer's deeds for the 1902 and 1932 tax sales were submitted as part of the record, the trial court's holding violates the Statute of Frauds and disregards Pennsylvania case law. *Id.* at 32-33.

It is well-settled that the plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title. *See Herder Spring*, 143 A.3d at 372. In tax sales, a tax title claimant does not acquire superior title until he first obtains a treasurer's deed. *See Gault's Appeal*, 33 Pa. 94, 99 (Pa. 1859); *see also City of Scranton v. O'Malley Manufacturing Co.*, 19 A.2d 269, 271 (Pa. 1941). When unseated land is sold, the treasurer must acknowledge the deed in open court. *See Osmer v. Sheasley*, 68 A. 965, 389-90 (Pa. 1908); *see also Goodman v. Sanger*, 91 Pa. 71 (Pa. 1879).

At the time of the 1902 tax sale, our Supreme Court noted that there was no legislation requiring the purchaser to record the deed or make an official record of his purchase, other than the acknowledgment of the deed by the treasurer in open court. *Osmer*, 68 A. at 390. Further, at the time, tax deeds were properly admitted into evidence where the prothonotary's minutes

- 9 -

showed that the county treasurer had acknowledged the deeds in open court and the record of the treasurer's deed showed that the plaintiff's deed was amongst them. *See Central Pennsylvania Lumber Co. v. Bristol*, 95 A. 383, 383-84 (Pa. 1915).

Further, in its examination of the relevant law, the trial court cited *Bell v. Provance*, 430 A.2d 391, 392-93 (Pa. Commw. 1981),[4] where the Commonwealth Court of Pennsylvania held that, "[t]he existence of a Treasurer's Deed establishes prima facie lawful title in the grantee by a rebuttable presumption of the regularity of the acts of public officials . . ." Even where the deed cannot be produced, where the record contains "reliable indicia" that a sale occurred comporting with the terms of the Act, this was sufficient evidence. *Id.* at 393.

The Statute of Frauds provides that "a purported transfer of an ownership interest in real property is not enforceable unless evidenced in writing and signed by the party granting the interest." *Zuk v. Zuk*, 55 A.3d 102, 107 (Pa. Super. 2012) (internal citations and quotations omitted). However, "the Statute of Frauds relating to interests in land is a declaration of public policy and can be waived if it is not raised in the pleadings of a case." *Birdsboro Mun. Auth. v. Reading Co. & Wilmington & N. R.R.*, 758 A.2d

---

[4] Although a decision of the Commonwealth Court is not binding upon this Court, it can be considered as persuasive authority." *Nw. Sav. Bank v. Knapp*, 149 A.3d 95, 98 n.3 (Pa. Super. 2016) (citation omitted).

222, 226 (Pa. Super. 2000). Appellant, due to its failure to raise the issue of the Statute of Frauds in its pleadings, has waived the issue. *Id.* at 226 (noting that the defense should be raised, at least, in any pretrial pleading); *see also* Pa.R.C.P. 1017 (pleadings allowed).[5]

Regardless, this issue is meritless. We find persuasive the Commonwealth Court's decision in *Bell*, essentially stating that so long as the record contains reliable indicia that the sale occurred comporting with the terms of the Act, that evidence is sufficient to find a deed issues. *See Bell*, 430 A.2d at 392-93. Although Appellant argues that no further evidence of the deed was introduced, citing in support *Grakelow v. Nash*, 98 Pa. Super. 316 (1930),[6] the trial court noted that the following evidence regarding the 1902-03 deed was introduced:

> In the present case, Woodhouse Club has produced the minutes of the Tioga County Court recorded in the Prothonotary's Office that show the acknowledgement in open court of the treasurer's deed conveying the property to Morris Manufacturing Company. Woodhouse Club has further provided the records from the Treasurer's Register Book under August 30, 1902, reflecting the tax sale of the property in Warrant 1179 to Morris Manufacturing Company. Furthermore, in Morris Manufacturing Company's deed

_____

[5] While Appellant's new matter avers that no admissible evidence exists regarding the 1902 treasurer's deed, Appellant does not mention the statute of frauds, nor does it aver the statute as a defense. *See* Answer and New Matter, at ¶¶ 105-106. Instead, Appellant asserts that the claims are barred "by the parole evidence rule." *See* Answer and New Matter, at ¶ 165.

[6] In *Grakelow*, our Court noted that it was the title claimant's evidentiary burden to put in evidence the deed and the record of the court showing that his acknowledgment of the deed was taken in open court. *Grakelow*, 98 Pa. Super. at 324; *but see Bell*, 430 A.2d at 392-93.

- 11 -

to Spicer and Vandegrift in 1909, Morris Manufacturing references the tax sale of 1902 as the source of its title corroborating the records of the Toga Treasurer.

*See* TCO, 1/8/14, at 34-35. Thus, Appellee established *prima facie* evidence of the entry of the 1902 deed, and the court did not err in so finding, and in entering summary judgment in Appellee's favor. **See Osmer**, 68 A. at 390; **see Central Pennsylvania Lumber Co.**, 95 A.3d at 383-84; **see also Swords**, 883 A.2d at 566–67.

Second, Appellant claims that quiet title based on the 1932 tax sale is erroneous because a redemption occurred, rendering the sale a nullity. **See** Appellant's Brief at 42. Appellant argues that the redemption gave no new title to C.C. Slaght: rather, it wiped out the tax sale in its entirety. **Id.** at 46. Further, Appellant argues that the time period for redemption was five years rather than two years, as the land was sold to county commissioners. **Id.** at 44. Essentially, Appellant contends that because C.C. Slaght held a title less than fee simple, redemption only served to "revive" the title as it was, i.e., with Appellant's reservation. **Id.** at 43.

Initially, we note that Appellant's challenge to the 1932 tax sale is of limited persuasiveness because as discussed *supra*, there was evidence of the delivery of the 1902 deed. Further, the trial court properly determined that the 1902 tax sale effectuated a title wash of the land and divested Appellant of its interests. **See** TCO, 1/8/14, at 24-35. Logically, even if a redemption occurred, it could not restore an interest that did not exist. Nevertheless,

insofar as Appellant challenges the quality of Woodhouse's title, we will address it herein.

At the time of the 1932 sale, the effect of a redemption was to set aside that tax sale and restore title as though the sale had not been made. **Yocum v. Zahner**, 29 A. 778, 779 (Pa. 1894). When the statutory time limit is exceeded and the landowner does not redeem the land, the title of the county following a tax sale is absolute and unqualified. **See Lee v. Jeddo Coal Co.**, 84 Pa. 74, 79 (1877). Contrary to Appellant's argument, at the time of the tax sale, the redemption period had been amended to two years. **See Babcock Lumber Co. v. Faust**, 39 A.2d 298, 302 (Pa. Super. 1944) (noting that the Act of May 9, 1889 acted to amend the redemption period for unseated lands to two years); **see also** Act of July 8, 1885, P.L. 268, 72 P.S. § 6111 *et seq.*, as amended by the Act of May 9, 1889, P.L. 141, § 1, 72 P.S. § 6113.

Based on this precedent, C.C. Slaght had until June 13, 1934 to redeem the property. They did not. Accordingly, absolute title vested in the county and divested any subsurface interests that may have remained following the 1902 tax sale, and summary judgment was properly entered.[7] **See Babcock Lumber Co.**, 39 A.2d at 302; **Swords**, 883 A.2d at 566–6.

---

[7] Although the record indicates that the property was permissively redeemed outside of the time period for redemption, the fact remains that absolute title vested in the county following the expiration of the time period for redemption. **See**, **e.g.**, **Goodman v. Sanger**, 85 Pa. 37, 41 (Pa. 1877).

Third, Appellant argues that summary judgment was improper, as a strict construction of the unseated land tax statutes does not authorize a title wash of a recorded non-producing, severed subsurface estate. *See* Appellant's Brief at 46-47. Additionally, Appellant argues that the subsurface estate is not "lands" per the meaning of the statute because there was no evidence that a mineral estate was assessed until 1953. *Id.* at 46. Appellant argues that even though this issue was decided by *Herder Spring*, the *Herder Spring* Court erred by not utilizing a strict construction approach and instead relying upon prior case law. *Id.* at 46-47.

The reservation in the 1893 deed included all minerals and mineral rights, oil and gas "in, on or under any of said premises, with the right to mine, bore for, and remove the same." *See* Deed, April 22, 1893, at 1. As we noted before, *Herder Spring* controls. *Herder Spring*, 143 A.3d at 360. In that case, where the assessment of the land does not specify whether it involved surface or subsurface rights, the tax sale conveys the property in its entirety. *Id.* The instant case also involves the sale of unseated land where the assessment did not specify whether it involved surface or subsurface rights. As in *Herder Spring*, the tax sale conveyed the property in its entirety.

Nevertheless, Appellant employs a tortured argument to contend that the subsurface estate was a non-land, fugacious interest in oil and gas, not an interest in the "lands." *See* Appellant's Brief at 49-50. We reject this contention. The tax sale of unseated lands also validly extinguishes

- 14 -

subsurface oil and gas rights, as the owner has the duty to notify the taxing authority of their separate interest in oil and gas, regardless of the development of that interest. *See Cornwall Mt. Invs., L.P. v. Thomas E. Proctor Heirs Trust*, 158 A.3d 148, 156-57 (Pa. Super. 2017).

Accordingly, summary judgment was proper, as the tax sale conveyed the oil and gas rights in their entirety. *See Swords*, 883 A.2d at 566–67; *Herder Spring*, 143 A.3d at 360; *Cornwall Mt. Invs.*, *L.P.*, 158 A.3d at 156-57.

In its fourth and fifth issues, Appellant contends that summary judgment for a tax sale claimant is erroneous where there exists disputed evidence of notice infirmities and other sale-related defects and avers its due process rights were violated. *See* Appellant's Brief at 53, 58. Appellant acknowledges that *Herder Spring* reiterated that collateral attacks on a tax sale may not be raised after the redemption period has passed. *Id.* at 53054, 58. However, Appellant argues that in the instant case, there were no delivered treasurer's deeds for the tax sales, and thus, the Hoyts and their heirs were not provided with actual notice. *See* Appellant's Brief at 53-54, 58.

*Herder Spring* noted that procedural defects could not be raised and the sale could not be collaterally attacked. *Herder Spring*, 143 A.3d at 374. Further, the *Herder Spring* Court found that the notice requirements under the Act of 1815 did not violate due process. *Id.* at 378. Regardless of Appellant's arguments regarding the validity of the deeds and notice of the

tax sale, the trial court properly entered summary judgment based on this precedent. ***Id.*** at 374, 378; ***see also Swords***, 883 A.2d at 566–67.

Sixth, Appellant claims that the court erred in finding Appellant was time-barred from defending its 1893 title based on jurisdictional defects to Appellee's claims. ***See*** Appellant's Brief at 66. However, as we have noted, this issue is again controlled by ***Herder Spring***, which stated clearly that petitioners may not raise tax sale defects as a defense to a quiet title action outside of the redemption period. ***See Herder Spring***, 143 A.3d at 374; ***Cornwall Mt. Invs.***, ***L.P.***, 158 A.3d at 160. Accordingly, the court did not err in granting summary judgment. ***Swords***, 883 A.2d at 566–67.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/18

- 16 -