J-A12010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ETD GROUP, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARVIN S. FACTOR | : | |
| | : | |
| Appellant | : | No. 2682 EDA 2023 |

Appeal from the Order Entered September 21, 2023
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2021-06673

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED JULY 24, 2024**

Marvin S. Factor ("Factor") appeals from the order entered September 21, 2023, in the Court of Common Pleas of Bucks County, that found ETD Group, LLC ("ETD") is entitled to specific performance of the real estate contract between ETD and Factor. Factor asserts the trial court erred in finding that the parties signed the contract, that the contract was properly authenticated, and alternatively, even if there was a valid contract between the parties, ETD breached the contract thereby allowing Factor to terminate the contract. Because we find Factor's claims are either waived or without merit, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

This case revolves around a real estate contract between ETD and Factor. Three contracts were negotiated and signed, initially between Edwin S. Vile, III ("Vile"), Troy Brennan ("Brennan"), and Factor. Vile subsequently formed the limited liability company ETD with Dominic Chilberti ("Chilberti").[1] The final contract, which is the subject of this appeal, was between ETD and Factor. The final contract, dated May 1, 2020, states that:

> [t]his agreement amends and restates any previous agreements between Marvin S. Factor and Factor Trucking Service, Inc., a Pennsylvania Corporation, collectively identified as the "Sellers" and Edwin S. Vile, III and Troy Brennan, collectively as the "Buyers[,"] including the Agreement of Sale dated, July 8, 2019 and the Amendment To Agreement of Sale, dated, July 1, 2019, collectively referred to herein as "Initial Agreement[."]

**See** Agreement of Sale, 5/1/2020, at 1. Within all three versions of the contract, Factor agreed to sell three lots, known as Tax Parcel Numbers 05-024-051, 05-024-051-001, and 05-024-052 ("Property"). The final contract included the agreed-upon price of $1,000,000, broken out as follows:

> 2. Purchase Price. The purchase price for the Property, subject to adjustments as provided in this Agreement, shall be One Million and No/100 Dollars ($1,000,000.00) (the "Purchase Price") which shall be paid as follows:
>
> > (a) Upon execution of this Agreement, it is acknowledged by the Parties that Buyers have provided the Seller with a deposit in the sum of One Hundred-Sixty Thousand and No/100 Dollars ($160,000.00) ("Initial Deposit") of which $30,000 is nonrefundable & $130,000, which is refundable within 365 days from the Effective Date of this Agreement;

_____

[1] ETD stands for Edwin, Troy, and Dominic.

(b) With an additional deposit of One Hundred Thousand and No/100 Dollars ($100,000.00) to be paid by the Buyer to the Seller upon signing of this Agreement, which shall be applied to the final purchase price;

(c) With an additional deposit of One Hundred Thousand and No/100 Dollars ($100,000.00) to be paid by the Buyer to the Seller Within ninety (90) days of the Agreement Date, which shall be applied to the final purchase price; and

(d) The balance of Six Hundred and Forty Thousand and No/100 Dollars ($640,000.00) in cash, certified check, or wired funds at the time of Closing.

*See id.* (cleaned up). The prior contracts only provided for a deposit of $60,000 and the remainder to be paid at the time of closing. It is undisputed that Factor received at least $360,000 from Vile and other members of ETD prior to the scheduled closing date of December 31, 2020.[2] It is further undisputed that ETD expended funds and resources to apply for permits to convert the Property into a recycling facility. This included obtaining environmental testing and municipal approvals.

The scheduled closing date of December 31, 2020, did not occur, and closing was rescheduled for October 14, 2021. Factor did not attend closing

---

[2] Factor admitted at trial that he received at least $360,000 towards the purchase price of the Property. The evidence presented by ETD included payments directly to Factor, a $5,000 payment to Factor's attorney as provided for in the final contract, payment for a stone delivery to the Property, and payments towards real estate taxes for the Property. The total amount the trial court found ETD paid prior to the original closing date was $391,723.37.

on that date, so the sale was not completed. ETD filed a complaint requesting specific performance of the contract on December 21, 2021. A two-day non-jury trial was held on September 11-12, 2023. The trial court permitted post-trial briefs and issued its decision on September 21, 2023, finding in favor of ETD and ordering specific performance of the contract.

On October 1, 2023, Factor filed a motion for post-trial relief asserting the trial court erred in its decision. ETD filed a post-trial motion requesting the trial court to schedule a closing date. On October 10, 2023, the trial court denied Factor's post-trial motion and granted ETD's post-trial motion. The trial court scheduled closing for November 3, 2023.[3] Factor requested the trial court to stay the order scheduling closing for November 3, 2023.[4] The trial court denied the stay on October 17, 2023. Factor filed a notice of appeal on October 18, 2023, and complied with the trial court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Factor raises three claims for our review:

1. Did the trial court erroneously enforce an agreement for the sale of land that was signed neither by [ETD's] agent nor by [Factor] himself?

_____

[3] Factor did not attend closing on November 3, 2023. After a hearing, Factor was held in contempt and the trial court ordered the Recorder of Deeds to record a deed transferring the Property to ETD despite Factor's refusal to sign the deed over to ETD.

[4] Factor also filed a request for stay with this Court on November 27, 2023, and January 5, 2024. These requests were denied on January 8, 2024.

2. Even if the parties entered into a valid contract, was [Factor] excused from attending an October 14, 2021 closing because:

   a. [ETD] did not make timely down-payments as required by the contract?

   b. The contract expired on April 30, 2021, thus excusing [Factor] from attending an October 14, 2021 closing, which [ETD] unilaterally scheduled without giving [Factor] proper notice?

Appellant's Brief, at 8.

"When examining a trial court's conclusions in a non-jury trial, our standard of review is well settled: we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." ***Skurnowicz v. Lucci***, 798 A.2d 788, 793 (Pa. Super. 2002) (citation, internal quotations marks, and brackets omitted).

We first must address ETD's claim that Factor waived his claims. ***See*** Appellee's Brief, at 11-12, 16 n.2. ETD asserts Factor waived his first claim, that neither ETD's agent nor Factor signed the contract, because it was not timely presented to the trial court, nor was it raised in his Rule 1925(b) statement. We agree, in part.

ETD correctly notes that the Statute of Frauds is an affirmative defense that must be pled in a responsive pleading under the heading "New Matter."[5]

---

[5] The Statute of Frauds requires the sale of real estate to be in writing and "signed by the party granting the interest." ***Woodhouse Hunting Club, Inc. v. Hoyt***, 183 A.3d 453, 459 (Pa. Super. 2018) (citation and internal quotation marks omitted).

*See* Pa.R.C.P. 1030(a); Appellee's Brief, at 11. However, the party pleading Statute of Frauds does not need to use the language "Statute of Frauds" so long as it is readily discernable that the party is attacking the complaint based upon the Statute of Frauds. *See Vintage Homes, Inc. v. Levin*, 554 A.2d 989, 993 (Pa. Super. 1989) (declining to find waiver where Levin did not use the language "Statute of Frauds" in his New Matter but did state that the agreement of sale was not signed by an authorized agent). Here, Factor did not use the language "Statute of Frauds" in his New Matter. Factor did, however, deny there was an agreement between ETD and Factor, because "Factor did not execute the 2020 Agreement[.]" Answer and New Matter, 7/17/2022, at 13. We find this sufficient to raise the defense of Statute of Frauds and decline to find waiver based upon Factor's failure to state "Statute of Frauds" in his Answer and New Matter.

That does not end our inquiry of waiver, though, as ETD points out that Factor did not include his first claim in his Rule 1925(b) statement. *See* Appellee's Brief, at 11-12. As the trial court cogently noted, "[Factor's] Statement of Errors Complained of on Appeal was not concise, rather it included fourteen (14) paragraphs of objections [that] incorporated by reference his reasons set forth more fully in his Motion for Post-Trial Relief, which set forth nine (9) multi-paragraph objections." Trial Court Opinion, 12/15/2023, at 7.

We emphasize that "this Court does not condone the incorporation by reference of other documents in a Rule 1925(b) statement." **Commonwealth v. Bernal**, 248 A.3d 495, 2021 WL 218035, unpublished memorandum, at *8 (Pa. Super. filed Jan. 21, 2021);[6] "Issues that are not included in the Rule 1925(b) statement are waived." **HTR Restaurants, Inc. v. Erie Insurance Exchange**, 307 A.3d 49, 71 (Pa. 2023); **see** Pa.R.A.P. 1925(b)(4)(vii). As such, we will only consider what issues we can discern from Factor's Rule 1925(b) statement without considering his references to other filings.

Factor does not raise any claim in his Rule 1925(b) statement that neither he nor an agent of ETD signed the contract. Therefore, we find Factor's first claim waived for failure to raise it in his Rule 1925(b) statement.

Even if we were not to find this claim waived, Factor's claim does not have merit.

> The Statute of Frauds instructs that a purported transfer of an ownership interest in real property is not enforceable unless evidenced in writing and signed by the part[ies] granting the interest. A writing required by the Statute of Frauds need only include an adequate description of the property, a recital of the consideration and the signature of the party to be charged.

**Trowbridge v. McCaigue**, 992 A.2d 199, 201 (Pa. Super. 2010) (citations and quotation marks omitted).

---

[6] "Non-precedential decisions [filed after May 1, 2019] may be cited for their persuasive value." Pa.R.A.P. 126(b)(2).

As Factor is the party granting the interest in the Property and he is the party to be charged with performing the contract, only his signature is required. Therefore, his claim that an agent of ETD did not sign the contract fails.

Furthermore, Factor admitted at trial that he signed the contract. *See* N.T. Trial, 9/11/2023, at 135. Factor asserts that the signature page of the contract did not belong to the contract and was a signature page from another document not presented at trial. *See* Appellant's Brief, at 38.

We find this argument unavailing. Factor admitted he did not read any of the three contracts, calling them "mumbo jumbo." *Id.* at 136. When discussing the final contract, Factor said "I never even read it, to be honest with you. I never—paperwork and me don't get along." *Id.* at 142. His claim that he signed another paper that was later attached to the May 1, 2020, contract is belied by his own testimony. Therefore, even if not waived, Factor's first claim does not merit relief, and the trial court had ample evidence upon which to base its decision.

Next, although not included in his statement of questions involved, Factor claims the contract was not properly authenticated. *See id.* at 43-46. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). ETD asserts this claim was not raised with the trial court. *See* Appellee's Brief, at 16 n.2. We agree. At trial, the contract, presented as Exhibit C, was admitted

without objection. *See* N.T. Trial, 9/11/2023, at 28; Pa.R.E. 103(a); ***Commonwealth v. Radecki***, 180 A.3d 441, 455 (Pa. Super. 2018) ("It is settled that an appellant's failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal.") (citation and internal quotation marks omitted). As such, this claim is waived.

Even if we did not find waiver, this claim would have no merit. Authentication requires "the proponent [to] produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). "[E]vidence that satisfies the requirement[ includes]: (1) *Testimony of a Witness with Knowledge*. Testimony that an item is what it is claimed to be." Pa.R.E. 901(b)(1). Here, Chilberti testified that, as a member of ETD, he was familiar with the final contract of May 1, 2020, to purchase the Property. *See* N.T. Trial, 9/11/2023, at 17-19. Chilberti further testified that he had known Vile for approximately three years and recognized his signature. *See id.* at 20-22. He identified the final contract as the contract negotiated between ETD and Factor. *See id.* This was sufficient evidence to authenticate the final contract. Factor's claim does not entitle him to relief.

Next, Factor asserts that he was not required to attend the closing scheduled for October 14, 2021, "because he had not been paid the amounts [enumerated in the contract] by the specified dates." Appellant's Brief, at 47. Factor did not present this claim to the trial court, as such, it is waived. *See*

Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Even if not waived, this claim does not merit relief. Factor did not dispute that tax payments were made by members of ETD on his behalf. Some of these payments were made in June of 2020, within 90 days of the signing of the final contract. *See* N.T. Trial, 9/11/2023, at 63 (Exhibit L admitted into evidence; Exhibit L shows payments by members of ETD on Factor's taxes as early as June of 2020 and continuing through November 2020). Furthermore, there was no evidence presented by either side of the exact date that the contract was signed. The only evidence presented was the effective date of the contract, May 1, 2020. The record shows that Factor was given his first payment on the final contract after the May 1, 2020, contract date. The first payment after May 1, 2020, was a check written on June 5, 2020. Again, the trial court had sufficient evidence to conclude that this payment was not late pursuant to the terms of the contract. *See* Agreement of Sale, 5/1/2020, at 1. Therefore, this claim has no merit.

Included within the argument that ETD breached the contract, Factor asserts that the money he received was not paid by ETD, but rather by third parties (Vile, Chilberti, and a company titled New Horizon Property Management, Inc ("New Horizon")). *See* Appellant's Brief, at 50. Because ETD did not pay Factor the money, he asserts that the contract was breached, and he was not required to attend closing. *See id.* Factor further argues that

payment of his taxes by Chilberti and New Horizon cannot satisfy the obligation of ETD to pay Factor $360,000 as per the contract. ***See id.***

This argument is specious. The following testimony was provided by Factor while discussing the various checks issued by Vile to Factor:

Q. If you received it, would you have cashed it?

A. I received $360,000 from Eddie Vile.

Q. Okay. This check was dated June the 5th of 2020?

A. I don't remember the dates.

Q. Okay. But at least you do agree that you received the amount of at least $360,000 from Mr. Vile?

A. Definitely.

Q. What was the point of that $360,000, sir?

A. Down payment on the purchase of the property.

Q. Which property?

A. 2607 Old Rogers Road, 2513 Old Rogers Road.

Q. Are those the three tax parcels we've been discussing here today?

A. I think there's four tax parcels, but three of them are, yeah.

N.T. Trial, 9/11/2023, at 120-21. When discussing the taxes paid on the Property, Factor testified as follows:

Q. As I understand your testimony, the agreement was that Mr. Vile was paying the taxes in furtherance of his purchase of the property, correct?

A. Correct.

Q. Do the numbers – the amounts paid for taxes, they're not included in the $360,000 that you told [] me about, are they?

A. No.

Q. So in reality, you received more than $360,000, as you put it, from Eddie Vile, right?

A. Correct.

*Id.* at 127.

It is undisputed that Vile was a member of ETD and the money he paid Factor was the down payments for ETD to purchase the Property. ETD treated the money paid by Vile as a loan to ETD. *See id.* at 46, 55. Factor does not provide us any case law that holds that an individual cannot pay the down payment on behalf of the entity he belongs to, nor could we find any law that supports his claim. As the trial court aptly held "[p]erformance was clearly established at trial evidenced through testimony and exhibits, as all payments required under the [p]urchase [p]rice section of [the contract] were paid. Improvements to the land were also made as well as other actions [ETD] took in furtherance of the contract." Trial Court Opinion, 12/15/2023, at 8. Therefore, this claim lacks merit.

Finally, Factor asserts that he was not required to attend closing on October 14, 2021, because the contract "expired on April 30, 2021." Appellant's Brief, at 53. Factor did not present this argument to the trial court, nor is it included in his Rule 1925(b) statement. *See* Pa.R.A.P. 302(a);

Pa.R.A.P. 1925(b)(4)(vii). As such, it is waived. Even if not waived, this claim

has no merit. Factor relies on the language of the final contract that states:

> Closing on the Property shall occur on or before December 31, 2020. However, if by no fault of the Parties, Closing cannot occur on or before, December 31, 2020 the Parties agree in good faith the Closing Date can be extended to a date not to exceed April 30, 2021. Any further change to the Closing Date may not occur, unless mutually agreeable to the Parties in writing.

Agreement of Sale, 5/1/2020, at 2-3. The contract does not state that it

expires on April 30, 2021, if closing does not occur. While it is true that neither

side presented any evidence of a writing to extend the closing date past April

30, 2021, the testimony at trial established that "[t]here were several dates

preliminarily set for closing that never occurred[.]" N.T. Trial, 9/11/2023, at

106. Factor asserts the time is of the essence clause within the contract

required that closing occur on or before April 30, 2021, and since it did not,

the contract expired. **See** Appellant's Brief, at 55.

> Our Supreme Court has previously held that:
>
> even though the time fixed in an agreement for settlement is stated to be of the essence of the agreement, it may be extended by oral agreement or be waived by the conduct of the parties, and where the parties treat the agreement as in force after the expiration of the time specified for settlement it becomes indefinite as to time and neither can terminate it without reasonable notice to the other.

***Warner Company v. MacMullen***, 112 A.2d 74, 78 (Pa. 1955) (citations

omitted). Both parties treated the agreement as in force after April 30, 2021.

Specifically, Factor testified that he intended to sell the Property until Vile

passed away in January of 2022. **See** N.T. Trial, 9/11/2023, at 145-146, 151.

- 13 -

ETD at all times was ready and willing to tender payment. Factor therefore waived the time is of the essence clause by his conduct and by failing to provide notice of termination to ETD. *See Cohn v. Weiss*, 51 A.2d 740, 742 (Pa. 1947) ("[A]lthough time is expressly made of the essence of the contract, this stipulation may be waived by a failure to insist on performance within the time prescribed, and it cannot thereafter be asserted as a defense to a suit for specific performance.") (citation omitted).

Because Factor's claims are all either waived or without merit, we affirm the order entered September 21, 2023.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/24/2024